The **LOUISIANA LAND AND EXPLORATION COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**No. 76–4380.**

United States Court of Appeals, Fifth Circuit.

May 30, 1978.

H. H. Hillyer, Jr., New Orleans, La., for petitioner.

Richard A. Solomon, Sheila S. Hollis, Washington, D. C., for intervenor Public Service Com'n of New York.

Howard E. Shapiro, Sol., Drexel D. Journey, Gen. Counsel, McNeill Watkins, II, Allen M. Garten, for Federal Energy Regulatory Com'n, Washington, D. C., for respondent.

Before BROWN, Chief Judge, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

Louisiana Land and Exploration Company (Land) petitions for review of an order

of the Federal Energy Regulatory Commission (FERC).[1] We must decide whether FERC erred in determining that Land made a sale of natural gas subject to FERC jurisdiction and in requiring Land to pay refunds. We find no error in the FERC jurisdictional conclusion and nothing unreasonable, arbitrary or abusive of discretion in the refund order. Accordingly, we affirm.

Land leased mineral rights in its property to a predecessor of Amoco Production Company (Amoco), a gas producer. The lease required Amoco to pay Land a gas royalty measured by a percentage. (either 27½% or 30%) of the value of the gas produced. The lease defined the value of gas produced to be either the price at which Amoco sold the gas or, if Amoco produced but did not sell the gas, the fair and reasonable value of the gas as reflected in part in the highest selling price of similar gas. The lease prohibited assignment, sublease or other transfer of leasehold rights without Land's prior written consent.

In an effort to sell all its rights in the lease, Amoco negotiated with Tennessee Gas Pipeline Company, a pipeline company. After Amoco and Tennessee reached tentative agreement, but before Land had approved the transaction, Tennessee approached Land and offered to purchase Land's royalty rights in the lease. Tennessee offered alternatively to amend the lease so as to measure royalties at a fixed rate (severance taxes plus 22.5¢ and later 25.0¢) per thousand cubic feet of gas removed from the leased premises rather than at a rate that varied with the selling price of the gas. Land declined to sell its royalty interest but accepted the fixed rate amendment and consented to the transfer of leasehold rights from Amoco to Tennessee. The arrangement was embodied in a letter con-

tract drafted by Land and signed by Land, Amoco and Tennessee.

Following the transfer of leasehold rights from Amoco to Tennessee,[2] FERC directed Land to respond to the question whether Land's participation in the transfer of the lease and subsequent receipt of renegotiated royalties constituted the sale of gas in interstate commerce subject to FERC jurisdiction and whether, if the arrangement constituted a jurisdictional sale, Land should obtain certificates of public convenience and necessity authorizing and regulating the sale.[3] Having considered Land's responses to the questions, FERC reasoned that "[t]he result . . . that Amoco is selling part of the gas to Tennessee for 21 cents per Mcf while Land . . . is receiving 25 cents for another part of the gas . . . economically is a sale" and concluded that "the kind of transaction here developed between Land . . . and Tennessee does not represent a royalty transaction but a sale of natural gas in interstate commerce subject to the jurisdiction of the Commission." Opinion No. 772, issued August 6, 1976, at 5, 4. FERC also determined that Land, having made jurisdictional sales of gas to Tennessee, was required to refund the amount by which its receipts under the royalty arrangement exceeded receipts permissible under a conventional and regulated gas sales contract. In Opinion No. 772–A, issued December 13, 1976, FERC denied Land's application for rehearing.

■ Our function in reviewing the FERC jurisdictional conclusion is to determine whether it is "without adequate basis in law." *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 678, 74 S.Ct. 794, 796, 98 L.Ed. 1035, 1045 (1954). The Natural Gas Act

---

1. FERC is the successor agency to the Federal Power Commission (FPC).

2. The transfer from Amoco to Tennessee was a sale of natural gas within the jurisdiction of FERC. *FPC v. Pan American Petroleum Corp.*, 381 U.S. 762, 85 S.Ct. 1802, 14 L.Ed.2d 714 (1965).

3. In the subsequent hearings FERC considered not only whether the royalty transactions were jurisdictional sales but also whether the public interest warranted certification of the transfer from Amoco to Tennessee. FERC resolved the certification question in Opinion No. 667, issued October 24, 1973. The question whether the royalty arrangement constituted a jurisdictional sale was severed without objection and scheduled for additional briefing. *Id.*

applies to "the sale in interstate commerce of natural gas . . . ." 15 U.S.C. § 717(b) (1976). Although Land would have us conclude that because it owns no gas it could never have made a sale of gas in interstate commerce, an analysis of relevant authorities leads us to a less mechanical interpretation of the Act.

In *United Gas Improvement Co. v. Continental Oil Co. (Rayne Field)*, 381 U.S. 392, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965), the Supreme Court examined the economic effect of a transaction rather than its form and held that sales to an interstate pipeline company of gas leases covering proven and substantially developed reserves to be sold in interstate commerce were sales of gas within the jurisdiction of FERC. The Court rejected the argument that local law, which did not recognize a sale of gas in place, was dispositive. Instead, reasoning that the sale of the leases "had accomplished the transfer of large amounts of natural gas to an interstate pipeline company for resale in other States," the Court approved the FERC determination that because the sale of the leases was the economic equivalent of the sale of gas, the sale was within the jurisdiction of the Commission. *Id.* at 401, 85 S.Ct. at 1522, 14 L.Ed.2d at 472. In *Continental Oil Co. v FPC (Ship Shoals)*, 370 F.2d 57 (CA5, 1966), *cert. denied*, 388 U.S. 910, 87 S.Ct. 2114, 18 L.Ed.2d 1349 (1967), this court delineated the *Rayne Field* three-pronged test of FERC jurisdiction over sales of gas leases:

(1) Is the economic effect of the transfer similar to that of a conventional sale?

(2) Is the subject of the transaction "proven and substantially developed" reserves?

(3) Is the transfer of the reserves for purpose of interstate transmission and resale?

370 F.2d 57, 62. Land did not sell a lease in a transaction that mirrors those in *Rayne Field* and *Ship Shoals*, but the analysis in *Rayne Field* and *Ship Shoals* supports the conclusion that a restrictive definition of "the sale in interstate commerce of natural gas . . . ." is inappropriate if it ignores economic realities.

This conclusion draws additional support from the reasoning of the court in *Mobil Oil Corp. v. FPC*, 149 U.S.App.D.C. 310, 463 F.2d 256 (1971), *cert. denied*, 406 U.S. 976, 92 S.Ct. 2409, 32 L.Ed.2d 676 (1972). The court in *Mobil* reversed a FERC order declaring that when a landowner executes an oil and gas lease providing royalties to be measured by proceeds or value of extracted gas, " 'he has contracted to retain an economic interest in interstate sales by the producer,' and 'has joined the other interest owners in such sales and he has become a seller of natural gas.'" *Id.* 149 U.S.App.D.C. at 316, 463 F.2d at 262. In reversing the FERC decision, the court reasoned that an economic interest in the proceeds of a sale, unaccompanied by authority to determine the incidents of the sale, does not make the interest owner a seller within the Natural Gas Act. Thus, the *Mobil* opinion anticipates the facts of this case and supports our conclusion that economic realities and not labels determine whether a jurisdictional sale has occurred.

The economic realities in this case begin with Land's execution of a lease in which Land retained not only the right to receive royalty payments but also the right to withhold consent to sublease or assignment by Amoco. A lessor's retention of these rights typically is unrelated to the incidents of the usual jurisdictional sale of gas by a producer-lessee. Indeed, the reasoning of *Mobil* suggests that unless Land had retained powers sufficient to determine the incidents of a jurisdictional sale by Amoco, Land would have made no jurisdictional sale at the execution of the lease.[4] Thereafter, however, Land exercised the retained power to withhold consent to Amoco's transfer of leasehold rights to Tennessee. The exercise of this power was an indispensable ingredient in an indisputably

---

4. We do not decide whether a lessor's unexercised retention of a power to block sublease or assignment by withholding consent constitutes sufficient incident-determining authority to support the conclusion that the lessor is a jurisdictional seller.

jurisdictional transfer.[5] The exercise of this power was essential to accomplishing the transfer of large amounts of natural gas to an interstate pipeline company for resale in other states and also affected an incident of the sale, the buyer's cost. Moreover, the exercise of the power, coupled as it was with an alteration of the royalty rate, had the effect of altering not only the cost of extracting the gas but also the cost of introducing the gas to commerce. Under these circumstances, we conclude that in economic effect Land sold gas in interstate commerce subject to FERC jurisdiction. We hold that by retaining a royalty interest in gas extracted from premises leased to Amoco, retaining power to prevent Amoco from selling its entire interest in proven and developed reserves to a pipeline company, and agreeing to an amendment of the terms of the royalty payments before consenting to the jurisdictional transfer, Land made a jurisdictional sale of natural gas.

■ Having concluded that we find no error in the jurisdictional conclusion of FERC, we also conclude that the Commission did not err in ordering Land to refund the surplus of amounts received over amounts that would have been received pursuant to a conventional gas sales contract. Land argues that because it does not own gas it cannot sell gas. Thus according to Land, because the Natural Gas Act permits the issuance of certificates only to applicants that are "able and willing properly to do the acts and to perform the service proposed . . . ," 15 U.S.C. § 717f(e) (1976), FERC lacks statutory authority to issue a certificate to Land, and hence to require a refund. The circularity of this argument is apparent, and our affirmance of the FERC jurisdictional conclusion is dispositive of it.

■ Nor do we agree that FERC approval[6] of the transfer of leasehold rights from Amoco to Tennessee prevents further FERC action against Land. Land reasons that because it was a party to the letter contract that accomplished the transfer and because a determination that Land is a jurisdictional seller having a refund obligation will destroy the letter contract approved by the Commission, the Commission lacked power to conduct further proceedings against Land. We need not determine whether the Commission action in this case has any effect on the private contract entered by Land, Amoco and Tennessee. Although Land originally was a party to the proceedings on the Amoco-Tennessee transfer, the Commission severed from those proceedings the issues involving jurisdiction over Land and other royalty owners before issuing an opinion regarding the Amoco-Tennessee transfer. Land did not object to the severance and cannot claim now that the earlier proceedings precluded further Commission action against Land.

Land protests that it, "of all the royalty owners in the nation," has been singled out for discriminatory treatment. Although Land claims that other similarly situated royalty owners have not been determined jurisdictional sellers or required to pay refunds, we need not address this question. The record reflects that the other royalty owners dismissed from the proceedings below were not similarly situated.

■ The claim that the Commission failed to consider the equities before issuing the refund order does not withstand scrutiny. Although neither the Land briefs nor the record on appeal identifies the equities that the Commission allegedly failed to consider, the ultimate balance of equitable considerations is committed to the discretion of the Commission. *Gillring Oil Co. v. FERC*, 566 F.2d 1323, 1326 (CA5, 1978). The Commission is required to explore and give due weight to considerations of equity. *Id.* at 1325–26. As the Commission noted in its opinion and order denying rehearing, "the matter of refunds was considered in a full hearing with a large record and it is necessary to arrive at a result that, considering the interests of producers and consumers, is

5. *Supra* note 2.

6. Opinion No. 667, issued October 24, 1973. *See* note 2 *supra*.

as equitable as possible." We cannot conclude, on the basis of the record, that the Commission failed to consider the equities.

The power of the Commission to effectuate the purposes of the Natural Gas Act by ordering producers to make refunds is well established. *See United Gas Improvement Co. v. Callery Properties*, 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284 (1965); *Mesa Petroleum Co. v. FPC*, 441 F.2d 182 (CA5, 1971). In this case the Commission concluded that a determination of the amount to be refunded required a comparison of the amount Land received with the amount Land would have received had it entered a conventional contract for the sale of gas to Tennessee. Toward that determination, experts testified concerning probable terms of a conventional contract. Although the experts disagreed on estimates and assumptions that would have affected the amount received by Land pursuant to a conventional gas sales contract, the Commission's decision to accept the testimony of one expert rather than another represents a reasonable choice well within its administrative expertise. Land's argument that the refund determination lacks substantial evidentiary support is incorrect.

AFFIRMED.