**PLAQUEMINES OIL SALES CORP.**

v.

**FEDERAL ENERGY ADMINISTRATION.**

No. 77–458.

United States District Court, E. D. Louisiana.

Nov. 28, 1978.

---

2. Melinda Reynoso Uppole (De Leon's American daughter) is missing from these affiants.

Robert L. Lobrano, Belle Chasse, La., for plaintiff.

Richard A. Sauber, Dept. of Justice, Civ. Div., Washington, D. C., for Federal Energy Administration and U.S.A., Intervenor and Counter Claimant.

Stewart E. Niles, Jr., and Howard E. Sinor, Jr., New Orleans, La., for Intervenor, Delta Marina, Inc.

DUPLANTIER, District Judge.

Plaquemines Oil Sales Corporation, hereafter referred to as POS, filed this petition for review under the Administrative Procedure Act, specifically 5 U.S.C. § 702, seeking to set aside an order by the Federal Energy Administration[1] directing POS to refund approximately $345,000 to various purchasers of fuel.

POS is a distributor of fuel oil, buying from producers and selling to retailers and consumers. After an audit, the FEA determined that POS had violated petroleum price regulation 10 C.F.R. 212.93, which generally provides that a seller may not charge a price higher than the price charged for that product on May 15, 1973, plus increased product costs.

POS contends that the FEA erred in several respects in calculating the amount POS allegedly overcharged its customers. The government, in response, filed a motion for summary judgment seeking affirmance of the agency order.

---

1. On October 1, 1977 the functions of the Federal Energy Administration were transferred to the Department of Energy, which is the defendant in this suit. The administrative proceedings were before the Energy Administration and the current pleadings refer to that organization.

Cognizant of our duty to affirm unless the order is in excess of the agency's authority or based upon findings which are not supported by substantial evidence,[2] we nevertheless remand to the agency for the following reasons.

1. In determining the amount of increased product costs which POS could pass on to customers by adding the costs to the May 15, 1973 base price, the FEA calculated the difference between the weighted average unit cost (WAC) of a product on May 15, 1973 and the WAC of a product in inventory in each successive pricing period. 10 C.F.R. 212.92.

There is an apparent error in the WAC for February 1974 (Administrative Record, p. 178). This figure appears to be a clerical error; apparently the January calculation of .2177 was used instead of the correct February figure of .2332 (Administrative Record, p. 40) or .2333 as contended by POS. It is for the agency to determine the effect which this error has on the refund computations.

2. There is an apparent inconsistency in the length of the pricing periods for which the FEA calculated the overcharge figures (Administrative Record, pp. 169–179). In some cases the FEA used a pricing period of one month, while in others a month was divided into two pricing periods. There seems to be no explanation in the record for the apparently arbitrary approach by the agency. As pointed out by POS, the use of different pricing periods in calculating the WAC figures affects the overcharge amounts.

3. The FEA divided customers of POS into 3 classes, pursuant to 10 C.F.R. 212.31 which defines "class of purchaser" as "purchasers to whom a person has charged a comparable price . . ." The POS purchasers were divided into 1) energy production end users, 2) other end users and 3) resellers. The record seems barren of evidence indicating any basis for the classifications. While the efficient administration of the Act would necessitate classification of

purchasers from a large oil distributor, who sells to a large number of purchasers, the situation of a seller with relatively few purchasers, such as POS, may not require any classification at all. In any case, such classification should have a rational basis evidenced in the record. This is not the case here.

4. The FEA refused to credit POS for any undercharges POS allegedly made as restitution for prior overcharges. The court recognizes that before POS can receive credit for undercharges under FEA standards, which we must accept unless arbitrary, there must be a showing that the undercharges were motivated by a desire to recompense overcharged purchasers.

The FEA properly points out at p. 378 of the Administrative Record that POS did not submit adequate proof that the undercharges were restitutionary. Were we not remanding for other purposes, we would not remand on this issue. However, in view of the importance of the undercharges to POS, we direct that POS be permitted to produce additional evidence, if it can, on this point.

5. On remand the FEA should explore the equitable considerations concerning its order that POS rebate all overcharges to its purchasers. Where a statute, through use of the term "may", gives an enforcement agency discretion in ordering rebates of prices above a regulatory ceiling, the agency determination should disclose that it gave weight to whatever equitable considerations may be involved. *See La. Land & Exploration v. Fed. Energy Com'n*, 574 F.2d 204 (5th Cir. 1978); *Gillring Oil Co. v. Federal Energy Regulatory Com'n*, 566 F.2d 1323 (5th Cir. 1978), involving proceedings under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*

This rule was developed because of the discretion the agency has in ordering rebates. *Placid Oil Company v. Federal Power Commission*, 483 F.2d 880 (5th Cir. 1973), aff'd sub nom *Mobile Oil Corp. v. FPC*, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). The regulatory agency enforcing the Emer-

2. Section 211(d)(1) of the Economic Stabilization Act of 1970 (note to 12 U.S.C. § 1904).

gency Petroleum Act also has discretion in ordering rebates, as a comparison of 10 C.F.R. § 205.195(a) with 15 U.S.C. § 717c(e) indicates.

There is no mention of any consideration of the equity in ordering the rebates in either the remedial order or the appeal decision of the FEA. This indicates that the agency may not have known that such an order was discretionary. On remand, the agency should reevaluate its decision to require POS to make refunds, giving due weight to the equitable consideration surrounding that decision. For instance, the claim by POS that Shell Oil, a major beneficiary of the refund order, violated the Act by increasing its prices to POS through the discontinuance of a freight allowance may be relevant to a determination of the equity in forcing POS to rebate almost $100,000.00 to Shell.

■ This case is remanded to the appropriate division of the Department of Energy for further action consistent herewith.