The **LOUISIANA LAND AND EXPLORATION COMPANY,** Petitioner,

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 84–4150.

United States Court of Appeals, Fifth Circuit.

May 5, 1986.

Bernard A. Foster, III (argued), Ross, March & Foster, Washington, D.C., H.H. Hillyer, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for petitioner.

Jerome Feit (argued), Sol., F.E.R.C., Washington, D.C., Joel M. Cockrell, for respondent.

Before CLARK, Chief Judge, and BROWN and JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Louisiana Land and Exploration Company (LL & E) petitions for review of a re-

fund order entered by the Federal Energy Regulatory Commission (FERC or the Commission) in accordance with FERC Opinions 772 and 772–A. LL & E contends that the agency's order is erroneous in the following respects:

(i) the Commission has arbitrarily employed August, 1976—the date on which Opinion 772 was issued—as the cutoff date for the determination of LL & E's refund liability;

(ii) the Commission has arbitrarily refused to employ actual production data, rather than estimated reserves, in performing its refund calculations; and,

(iii) the Commission has assessed interest on the refund at an incorrect rate.

We have reviewed the record and can find nothing unreasonable, arbitrary or capricious in the manner in which LL & E's refund liability was calculated. The interest assessed against the refund, however, was assessed at a rate higher than was permissible in light of the Commission's own precedents. Thus, while we affirm the order directing the payment of refunds by LL&E, we reverse that portion of the order pertaining to the interest assessment and remand so that FERC may correctly compute the amount of interest due.

### If You've Got a Tough Case ...

As with most petitions for review of orders of the Federal Energy Regulatory Commission,[1] the background of this appeal is intricate, technical and somewhat dry.[2] The story began more than twenty-five years ago, in 1960, when Amoco Production Company (Amoco) sought to transfer its leasehold rights on gas properties in the Bastian Bay Field to Tennessee Gas Pipeline Company (Tennessee). LL & E was the lessor and principal royalty interest holder on these properties and it held the right to reject any assignments of the leasehold interest by Amoco. Initially, LL & E resisted Amoco's efforts to transfer the leasehold and withheld its approval of the assignment. After it was offered an increased return on its royalty interest, however, it consented to the assignment.[3]

The transfer of the leasehold from Amoco to Tennessee was clearly a sale of natural gas that was subject to FERC jurisdiction. The status of the royalty transaction remained unclear, however, until FERC issued its Opinion 772. In Opinion 772, FERC held that the increased royalty exacted by LL & E in exchange for approving the Amoco/Tennessee assignment was a jurisdictional sale of gas under the *Rayne Field* doctrine. *See United Gas Improvement Co. v. Continental Oil Co. (Rayne Field)*, 381 U.S. 392, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965). That jurisdictional finding was upheld by this Court in *Louisiana Land & Exploration Co. v. Federal Energy Regulatory Commission*, 574 F.2d 204 (5th Cir.1978) *(Louisiana Land I)*.

As a result of the jurisdictional finding, it was necessary to determine whether LL & E owed refunds to Tennessee for the amounts by which its renegotiated royalty receipts exceeded what it would have received under a conventional, regulated pricing structure. This determination was somewhat complicated, however, because although LL & E had "sold gas" in a jurisdictional sense, it had never actually sold any gas.[4] FERC was faced with the

---

1. The Federal Energy Regulatory Commission (FERC) is the successor agency to the Federal Power Commission (FPC).

2. *See,* e.g., *Coastal Oil & Gas v. FERC,* 782 F.2d 1249, 1250 (5th Cir.1986); *Pennzoil Co. v. FERC,* 645 F.2d 360 (5th Cir.1981); *ECEE, Inc. v. FERC,* 645 F.2d 339 (5th Cir.1981).

3. The details of this transaction are set out in greater detail in *Louisiana Land and Exploration Co. v. FERC,* 574 F.2d 204 (5th Cir.1978).

4. The difficulties inherent in the use of language that is susceptible to more than one interpreta-

tion takes us back to Lewis Carroll's book *Through the Looking Glass.*

> "When I use a word," Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean—neither more nor less."
> "The question is," said Alice, "whether you can make words mean so many different things."
> "The question is," said Humpty Dumpty, "which is to be master—that's all."

*Quoted in Bartlett's Familiar Quotations* 705, (14th ed. 1968).

task of arriving at a refund methodology which reflected the economic realities of the royalty transaction, despite the fact that as a royalty interest owner LL & E never sold gas under a conventional contract.

The method employed by Opinion 772 for calculating the amount of the refund due utilized a hypothesised, conventional gas sales contract between LL & E and Tennessee. FERC heard extensive testimony as to the estimated reserves which lay under the properties in Bastian Bay, and it adopted the estimates proffered by Tennessee as the basis for its calculations. Using those estimates, and certain other factors not here relevant,[5] FERC arrived at a formula which subtracted the amount LL & E would have received under the terms of a "conventional" contract from the considerably greater sum LL & E had actually received from its royalty arrangement with Tennessee. The difference yielded was the amount of the refund owed.

LL & E disputed the validity of this methodology in the first appeal in this case, *Louisiana Land I.* After concluding that FERC's assertion of jurisdiction was proper, the Court in *Louisiana Land I* turned to LL & E's contention that the refund determination was not supported by substantial evidence on the record. The Court concluded that the Commission's refund calculus was a reasonable exercise of its administrative discretion and affirmed both FERC's methodology and its refund order.

LL & E filed a petition for rehearing in our court and a motion in the alternative for leave to adduce additional evidence before the Commission. As with most such petitions, the request for rehearing took issue with the Court's whole opinion in *Louisiana Land I.* It was summarily denied. The motion for leave to adduce addi-

tional evidence, however, was of greater significance because in it LL & E contended that, using the Commission's own methodology, no refunds were actually due. In that motion, LL & E represented that:

> Using the criteria established by FPC Opinion No. 772, and extending the refund calculations so as to take into account actual production volumes through the year 1977, and the actual amounts received by Land Company as royalties for the same period, there are now no refunds due.[6]

The Court, in response to this motion, stated "the Commission should ... allow additional hearing on whether refunds should be recalculated as urged in the alternative motion." *Id.* at 972.

Following our denial of rehearing in *Louisiana Land I,* the Commission entered an order on September 21, 1983, directing the payment of refunds by LL & E for a period commencing with the effective date of the renegotiated royalty arrangement with Tennessee[7] and ending on the date on which Opinion 772 was issued.[8] LL & E filed for reconsideration by the Commission and contended that the order of September 21 was in error in the following four respects:

(1) The decision to terminate the refund calculation as of the date on which Opinion 772 issued was not supported by the text of that opinion;

(2) The Commission's calculation was factually in error because it attributed to LL & E royalty volumes belonging to another royalty owner, Delta Development;

(3) the Commission had acted without allowing the "additional hearing" granted to LL & E in this Court's denial of rehearing in *Louisiana Land I;* and

---

5. The details of the refund methodology are considered in great detail in Opinions 772 and 772–A. *See* The Delta Development Co., Inc., 56 F.P.C. 922 and 56 F.P.C. 3540 (1976).

6. *Petition on Behalf the Louisiana Land & Exploration Company and Alternative Conditional Application for Leave to Adduce Additional Evi-*

*dence* at 12, *Louisiana Land & Exploration Co. v. FERC,* 579 F.2d 971 (5th Cir.1978).

7. The effective date of the agreement was July 15, 1960.

8. Opinion 772 was issued on August 5, 1976.

(4) the Commission had improperly assessed interest on the refund principle.

The Commission granted reconsideration, but subsequently entered an order denying rehearing on February 6, 1984. It is the denial of rehearing which gives rise to the present appeal.

### ... *Argue the Law* ...

LL & E's first complaint is with the decision by FERC to terminate the refund calculation as of the date on which Opinion 772 was issued. The Commission determined that LL & E incurred refund liability in July of 1960, when the renegotiated royalty arrangement took effect, and that that liability continued until August of 1976, when LL & E's royalty receipts were limited to the just and reasonable rate under the mandate of Opinion 772. LL & E contends that that decision is not supported by Opinion 772. To the contrary, we have reviewed FERC's analysis of this issue and find its reasoning to be persuasive.

Opinion 772 held that "refunds should be recalculated and paid up to the effective date of the new rates" that were to be imposed as a result of the jurisdictional finding. The Delta Development Company, 56 F.P.C. 922, 930 (1976). The new rate schedules required by Opinion 772 were to be filed within 120 days of its issuance "for the period from July 15, 1960 ... *until the present time* reflecting rates that are the lesser of the respective contract rates or the rates required by the applicable area rates." · *Id.* at 930–31 (emphasis added). LL & E was then to file, again within 120 days "a computation of a refund to be made to Tennessee for the period July 15, 1960 ... *until the date the rates prescribed by [this opinion] go into effect.*" *Id.* at 931 (emphasis added).

 In light of the holding and orders in Opinion 772, FERC could properly determine that the refund calculations should terminate as of the date the unlawful pricing arrangement was ended. As of August 6, 1976, when Opinion 772 was issued, LL & E was prohibited from receiving excessive revenues from its royalty arrangement with Tennessee. When those excessive charges ceased, the necessity for a remedial refund likewise disappeared. The Commission's construction of its own order is entitled to great weight and commensurate deference on judicial review,[9] and we hold that FERC's construction of its own order "is clearly reasonable in this context." *National Labor Relations Board v. Transportation Management Company*, 462 U.S. 393, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983). Thus, the Commission's decision that the refund calculation must terminate as of August 6, 1976 is affirmed.

### ... *Then Argue the Facts* ...

LL & E next mounts a two-pronged attack on the Commission's refusal to employ actual production data in computing its refund calculation. LL & E's primary objection is that the use of production estimates in the refund calculation was arbitrary and capricious when actual production figures were available for use. As an alternative ground, LL & E contends that the calculation should not have been undertaken in the absence of the "additional hearing" authorized by *Louisiana Land I.*

### *Estimated Reality*

The properties in the Bastian Bay field were burdened by a number of royalty interests, not the least of which belonged to LL & E. LL & E held an interest of approximately 60%, although a small percentage of that 60% interest was, in fact, owned by another royalty holder, Delta Development Company (Delta). At the hearing which led to the issuance of Opinion 772, LL & E's Vice-President testified that its share of the 60% was "really 100%," and Delta was later dismissed from the proceeding in Opinion 772–A. *See* The Delta Development Company, 56 F.P.C. 3540 (1976).

---

**9.** *See Mitchell Energy Corp. v. FERC,* 651 F.2d 414, 417 n. 9 (5th Cir.1981); *cf. Seaboard Coast-* line Railroad Co. v. United States, 599 F.2d 650, 652 (5th Cir.1979).

LL & E now contends that the use of estimated reserves and arithmetic field averages is arbitrary and capricious. When estimated reserves are utilized, royalty volumes attributable to Delta, for which LL & E receives no royalties, are included in LL & E's share. LL & E acknowledges that in 1976, when Opinions 772 and 772–A were issued, it was necessary to utilize these estimates for the years 1971 to 76 because there was a dearth of actual production data available. It argues, however, that that necessity has been eliminated because Tennessee, the operator on the Bastian Bay properties, has provided actual production data in its most recent filing with FERC.

As a second attack on the data used in calculating the refund, LL & E takes issue with the use of an arithmetical field average as an assumption underlying the calculation. An arithmetical average of production is misleading, they argue, because it assumes that gas is distributed evenly throughout the field. LL & E suggests that the calculation could more properly and accurately be performed by using a weighted average—one which measures production from each leasehold interest.

 Whatever the merit of these arguments, the issues to which they are directed are no longer open. They were disposed of with the mandate in *Louisiana Land I.* The estimates and assumptions of which LL & E complains were an intrinsic part of the refund methodology that was affirmed by this Court in that decision. In *Louisiana Land I*, we held that:

[a]lthough the experts disagreed on *estimates and assumptions* that would have affected the amount received by [LL & E] pursuant to a conventional gas sales contract, *the Commission's decision to accept the testimony of one expert over another* represents a reasonable choice well within its administrative expertise.

574 F.2d at 209 (emphasis added). The propriety of the use of estimates was essential to the holding in *Louisiana Land I.* The decision of "a legal issue or issues by an appellate court establishes the law of the case and must be followed in all subse-

quent proceedings in the same case." *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir.1978). The question of FERC's reliance on estimates and assumptions has been definitively answered and "will be followed without re-examination" in this appeal. *Dickinson v. Auto Center Manufacturing Company*, 733 F.2d 1092, 1096 (5th Cir. 1983). We hold, therefore, that FERC did not act in an arbitrary and capricious manner when it declined to utilize actual production data in recalculating LL&E's refund liability.

### When a Hearing Isn't a Hearing

LL & E also contends that it was improper for the Commission to issue the final refund order in the absence of the "additional hearing" referred to in our denial of rehearing in *Louisiana Land I.* LL & E erroneously assumes that the additional hearing referred to was, or had to be, a full blown evidentiary hearing; that is simply not the case. The Court in *Louisiana Land I* merely directed the Commission to consider whether "refunds should be recalculated as urged in the alternative motion." 579 F.2d at 972. That consideration could adequately be afforded without resort to an evidentiary hearing because it involved principally questions of law.

 The recalculation as urged by LL & E involved the following two "legal" issues:

(1) whether the refund calculation should terminate as of the date Opinion 772 issued in 1976; and,

(2) whether LL & E should be permitted to introduce actual production data for use in the calculation, when a methodology utilizing estimates had already been affirmed by the Fifth Circuit.

The positions of the parties with regard to these legal issues were already clear, and all that remained for decision was their resolution. An agency is not required to hold an evidentiary hearing when the proffered evidence will be of no relevance. Where there are no issues of material fact presented which would require an evidentiary hearing, such a hearing is simply not

required. *New Orleans Public Service, Inc. v. FERC,* 659 F.2d 509, 513 (5th Cir. 1981). So long as each of the parties is afforded an opportunity to present its specific views on the legal issue to the Commission, the agency has the "authority to tailor administrative procedures to the needs of a particular case." *Id.* at 515, *citing Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 544, 98 S.Ct. 1197, 1212, 55 L.Ed.2d 460 (1978).

We hold that an evidentiary hearing was not required to resolve the legal questions raised by LL & E. LL & E filed a lengthy brief with the Commission detailing its views on these issues,[10] and the Commission granted reconsideration presumably in light of this submission. Although FERC later denied rehearing on the LL & E petition, it is clear from the order denying rehearing that the Commission had carefully considered LL & E's views. FERC clearly explained why it declined to follow LL & E's contentions, and its reasoning is both cogent and persuasive. The "hearing" envisioned in *Louisiana Land I* required no more than that fair consideration be given to LL & E's arguments. Such consideration was forthcoming, and we decline to require more.

### ... Then Argue Loudly

The final issues in this appeal concern the interest that has been assessed against the refund principal. LL & E first argues that interest cannot lawfully be assessed because the Commission has unreasonably delayed issuance of the final refund order. LL & E also takes issue with the rate at which interest has been assessed by the Commission. While we hold that FERC could properly assess interest on the refund principal, we agree with LL & E that the rate utilized exceeded that which was authorized by the Commission's own precedents. Thus, the interest assessment is reversed and the case is remanded so that

FERC may recalculate the interest owed in accordance with this opinion.

The purpose of assessing interest against refunds is to avoid unjust enrichment to a wrongdoer. *United Gas Improvement Co. v. Callery Properties, Inc.,* 382 U.S. 223, 230, 86 S.Ct. 360, 364, 15 L.Ed.2d 284, 290 (1965). It is important to "bear in mind that we are dealing with unlawful charges" that have resulted in an excessive windfall to LL & E. *United Gas Pipeline Co. v. FERC,* 657 F.2d 790, 795 n. 10 (1981). Since the issuance of Opinion 772, LL & E has had control over a refund principal which it had no right to retain. The Commission could properly hold that since LL & E had the use of consumer money to which it was not entitled during the time period involved, it was only fair that the refund be repaid with interest. We cannot say that the Commission's action was arbitrary, capricious, or an abuse of discretion, *Superior Oil Co. v. Federal Energy Regulatory Commission,* 563 F.2d 191, 201 (5th Cir.1977), so we affirm the decision to assess interest against the refund.

LL & E, however, objects to the imposition of interest after 1979 because the Commission has "unreasonably delayed" issuance of the final refund order. It relies on *Estate of French v. Federal Energy Regulatory Commission,* 603 F.2d 1158, 1168 (5th Cir.1979) for the proposition that the Commission may not assess interest for delay that results from its own determination to "[l]et the citizen await the leisurely pleasure of his servant, the government." *French,* however, was a case in which a seven year delay was found to be per se unreasonable. Upon our review of our record, we cannot say that the delay in this case was per se unreasonable.

It is certainly true that LL & E submitted its final refund report in 1979 and that for three years following that submission FERC sought no further submissions from the parties. LL & E argues that

---

**10.** *See* Application of the Louisiana Land & Exploration Company for Rehearing at A.R. 4717– 21, 4724–27.

because there is no apparent reason which would justify the delay, the imposition of interest during that time period is inequitable. This argument ignores the fact that in its 1979 submission LL & E sought to have its refund liability recalculated. It also downplays the significance of the lengthy objections to LL & E's 1979 report that were filed by Tennessee and by New York Public Service.

These proceedings "indicate no extraordinary delay," *Ginther v. Federal Energy Regulatory Commission*, 618 F.2d 1138, 1140 (5th Cir.1980), which would warrant relief under our holding in *French*. Only three years after the 1979 submissions, FERC convened a settlement conference to attempt to resolve the differences among the parties; one year later, it issued its final refund order. We cannot say that that time period is per se unreasonable. Thus, the Commission's decision to assess interest beginning in 1961 and continuing through the entire period of nonpayment is affirmed.

 There remains a question regarding the rate at which interest may be assessed against the refund owed by LL & E. In Opinion 772, interest on the refund was set at 7% until October 10, 1974 and at 9% thereafter. In its September 21, 1983 order directing payment of the refunds, however, the Commission increased the interest assessment for the period after October 1, 1979 to a new variable rate which was tied to a fluctuating prime rate.

The Commission relies upon new regulations promulgated in September of 1979 to justify the increase. *See* 18 C.F.R. § 154.-102(c). These regulations increase the interest rate on refund orders which were not "final and non-appealable" as of September 10, 1979.[11] The "non-final" nature of Opinion 772 was demonstrated, the Commission reasoned, by the fact that LL & E

sought to have its refund liability recalculated following our denial of rehearing in *Louisiana Land I*. In the Commission's view, Opinion 772 became final when FERC issued its order directing disbursement of the refund on September 21, 1983. That order, as is apparent, was issued some three years after the effective date of the new interest rate regulations.

We believe that the Commission's reasoning misconstrues the nature of a "final order." With the issuance and subsequent affirmance of Opinion 772, the jurisdictional finding and the refund methodology relating to this transaction were conclusively established. While there may have remained for decision certain subsidiary issues regarding what figures belonged in the calculus, the existence *vel non* of the refund obligation was no longer open.

The proceedings in *Louisiana Land I* were concluded prior to the date on which the new interest rate regulations went into effect and, as affirmed by this Court, Opinion 772 contained stipulated rates of interest. It was, therefore, a final, non-appealable order to which the new interest rate regulations do not apply.[12] We must, therefore, reverse and remand so that interest may be assessed in accordance with the rates established in Opinion 772.

### Conclusion

The decision of the Commission is affirmed in all respects save the rate at which it has assessed interest on the refund. That decision is reversed and the case is remanded with directions that the Commission assess interest on the refund principle in accordance with the rates established in Opinion 772.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

**11.** *Rate of Interest on Amounts Held Subject to Refund; Order Clarifying Orders Nos. 47 and 47–A*, FERC Stats. and Regs. 1977 to 1981, ¶ 30,121, [45 Fed.Reg. 3888 (January 21, 1980)].

**12.** In so holding, we stand with the District of Columbia Circuit which has held that the new

interest rate may not be applied to refund orders which have previously established interest rates applicable to specific proceedings. *See FERC v. Triton Oil and Gas Corp.*, 242 U.S.App. D.C. 265, 750 F.2d 113 (1984).