**LOUISIANA LAND & EXPLORATION CO., Plaintiff–Appellant,**

v.

**AMOCO PRODUCTION CO., et al., Defendants–Appellees.**

No. 88–3496.

United States Court of Appeals, Fifth Circuit.

Aug. 2, 1989.

Rehearing Denied Sept. 15, 1989.

M. Hampton Carver, John Anthony Dunlap, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., Jack C. Caldwell, Lafayette, La., for plaintiff-appellant.

Frank J. Peragine, Charles Coffee, Simon, Peragine, Smith & Reafearn, Clyde Mote, Amoco Production Co., New Orleans, La., for Amoco.

Kevin R. Rees, Edward C. Abell, Jr., Lafayette, La., for Tennessee Gas.

Before ALDISERT[*], REAVLEY, and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

This case has a long and tortuous history and is now before this court for the third time in ten years. The plaintiff-appellant, Louisiana Land & Exploration Company (LL & E) has owned lands in the Bastian Bay natural gas field in Plaquemines Parish, Louisiana, since the 1920s. In 1955 and 1959, LL & E executed mineral leases in the Bastian Bay field to Pan American Petroleum Corp., the predecessor to the defendant-appellee Amoco Production Company (Amoco). The leases required Amoco to pay LL & E a gas royalty measured by a percentage (27½ or 30 percent) of the value of the gas produced. The leases defined that value to be either the price at which Amoco sold the gas or, if Amoco produced but did not sell the gas, the fair and reasonable value of the gas. The leases prohibited assignment, sub-lease or other transfer of leasehold interests without LL & E's prior written consent.

In 1960, Amoco decided to sell all these interests to Tennessee Gas Pipeline Company (Tennessee). In a three-party letter agreement, dated July 15, 1960, LL & E agreed to the assignment of the leases to Tennessee, Tennessee agreed to measure LL & E's royalties at a fixed rate (severance taxes plus 22.5 cents and later 25.0 cents) per thousand cubic feet of gas, and Amoco agreed to be a solidary obligor on the agreement between Tennessee and LL & E. Tennessee and Amoco then entered into a separate agreement whereby Amoco sold its leases to Tennessee for a price equivalent to 21 cents per thousand cubic feet of gas.

In 1964 the Federal Power Commission (FPC), now the Federal Energy Regulatory Commission (FERC), issued an order taking jurisdiction over the transaction between Amoco and Tennessee. An appeal was taken to the Tenth Circuit, which held that the sale of a lease was not a sale of gas for resale in interstate commerce, and that decision was summarily reversed by the Supreme Court. *Pan American Petroleum Corp. v. FPC*, 339 F.2d 694, 696 (10th Cir. 1964), *summarily reversed*, 381 U.S. 762, 85 S.Ct. 1802, 14 L.Ed.2d 714 (1965). The Supreme Court's ruling was based on its decision in *United Gas Improvement Co. v. Continental Oil Co.*, 381 U.S. 392, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965), in which the Court held that the regulatory scheme of the Natural Gas Act "would be hamstrung if it were tied down to technical concepts of local law," *id.* at 400, 85 S.Ct. at 1522, that the jurisdiction of the FPC is controlled by "significant and determinative" economic facts, *id.* at 401, 85 S.Ct. at 1523, and that lease-sales of proven and substantially developed natural gas fields to interstate pipe line companies for resale in other states are jurisdictional sales of natural gas, *id.*, 85 S.Ct. at 1522–23. Thus, the transfer of Amoco's leases to Tennessee was a sale of natural gas subject to the jurisdiction of the Natural Gas Act. 15 U.S.C. § 717.

In 1976 the FPC turned its attention to the transaction between Tennessee and LL & E. In Opinion No. 772 the FPC held that, because LL & E had used its power of approval to negotiate a different and higher price for its royalty gas than Amoco received for the non-royalty gas, the 1960

[*] Circuit Judge of the Third Circuit, sitting by designation.

letter agreement constituted a sale by LL & E to Tennessee of natural gas in interstate commerce subject to the jurisdiction of the FPC. The FPC held that the economic effect of the LL & E–Tennessee transaction was that LL & E had taken its royalty in kind and sold that gas to Tennessee. The FPC further held that the price LL & E received for its gas was in excess of the filed rate for the Bastian Bay Field and ordered LL & E to refund the amount it had received in excess of the filed rate. This court affirmed the FPC determination in *Louisiana Land & Exploration Co. v. FERC,* 574 F.2d 204 (5th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979). After five more years of confrontation with the FERC over how to calculate the refund and the interest due, including another trip to the Fifth Circuit, *Louisiana Land & Exploration Co. v. FERC,* 788 F.2d 1132 (5th Cir.1986), LL & E paid the refund to Tennessee.

In 1987 LL & E filed suit against Amoco for the amount of the refund it had paid to Tennessee claiming that Amoco was solidarily obligated to pay the fixed royalties contracted for in the 1960 letter agreement. The district court held that Amoco was solidarily obligated to pay the refunded royalties, that the filed rate doctrine did not apply to the agreement between Amoco and LL & E, but that LL & E's suit against Amoco was prescribed under Louisiana law. The district court, therefore, entered summary judgment for Amoco. We affirm, although on different grounds.

■ On appeal, LL & E challenges the district court's holding of prescription, and Amoco challenges the district court's holding that it is a solidary obligor on the agreement between LL & E and Tennessee. We reach neither of these issues, although we will assume that Amoco is Tennessee's solidary obligor. Amoco also challenges

the district court's holding that the filed rate doctrine does not preclude LL & E's suit. LL & E argues that the Natural Gas Act cannot apply to the contractual obligation of Amoco to LL & E because LL & E sold no gas to Amoco, and because the LL & E–Amoco agreement was merely an agreement between two owners of mineral interests regarding a division of royalties to which the Natural Gas Act does not apply.[1] LL & E's position comes dangerously close to requesting this court to conclude that the 1960 letter agreement, which was in fact a royalty agreement, was not a jurisdictional sale of natural gas.[2] Such a conclusion would be contrary to the law of this case. This court has already affirmed the FPC finding that the 1960 letter agreement constituted a sale of natural gas for the purposes of the Natural Gas Act, and we must assume, therefore, that Amoco was the solidary obligor of the buyer in that sale. Because we hold that the filed rate doctrine creates a contract defense which is available to Amoco under state law, we do not decide whether the Natural Gas Act creates FERC jurisdiction over the LL & E–Amoco transaction.

■ Under the filed rate doctrine, when there is a conflict between the filed rate for interstate sales of natural gas and the contract rate for such a sale, the filed rate controls. *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 582, 101 S.Ct. 2925, 2933, 69 L.Ed.2d 856 (1981). Thus the Natural Gas Act creates an absolute defense to any state law action for breach of contract, or other cause of action enforcing the benefit of the bargain, which seeks as damages the unlawful contract rate. *See id.* at 582–84, 101 S.Ct. at 2933–34; *Southern Union Co. v. FERC,* 857 F.2d 812, 817–18 (D.C.Cir.1988); *Gulf States Utilities Co. v. Alabama Power Co.,* 824

---

**1.** *See Flowers v. Diamond Shamrock Corp.,* 693 F.2d 1146, 1153 (5th Cir.1982); *Bowers v. Phillips Petroleum Co.,* 692 F.2d 1015, 1017 (5th Cir.1982); *Mobil Oil Corp. v. FPC,* 463 F.2d 256, 260 (D.C.Cir.), *cert. denied,* 406 U.S. 976, 92 S.Ct. 2413, 32 L.Ed.2d 676 (1972); *Sowell v. Natural Gas Pipe Line Co. of Am.,* 604 F.Supp. 371, 374 (N.D.Tex.1985), *aff'd,* 789 F.2d 1151 (5th Cir. 1986).

**2.** In fact, counsel for LL & E began his oral argument before this court with the statement that LL & E has "the dubious distinction of being the only lessor in the history of the United States ... subjected to regulation under the Natural Gas Act."

F.2d 1465, 1471 (5th Cir.), *modified,* 831 F.2d 557 (5th Cir.1987). If LL & E had sued Tennessee directly under state law for breach of the 1960 letter agreeement, Tennessee would have had an absolute defense to that breach of contract action.

LL & E, however, chose to sue Amoco. Under the contract Amoco is Tennessee's solidary obligor; and, as such, Amoco is primarily liable on the obligation. LL & E may seek performance of the obligation or damages for its breach directly from Amoco. La.Civ.Code Ann. art. 1795 (West 1987). As a solidary obligor, however, Amoco stands in the shoes of Tennessee and may raise any defense that arises from the nature of the obligation or any defense that Tennessee could raise, except for those defenses that are personal to Tennessee. La.Civ.Code Ann. art. 1801 (West 1987).

■ The only question that remains is whether the contract defense created by the operation of the Natural Gas Act is personal to Tennessee under Louisiana law. "Personal defenses are such as infancy, interdiction, coverture, lunacy, bankruptcy and the like." *Simmons v. Clark,* 64 So.2d 520, 523 (La.Ct.App.1953). Courts have held the following defenses to be personal defenses under Louisiana law: interspousal immunity, father-son immunity, governmental immunity, charitable immunity, an insane person's incapacity to be liable for his torts, infancy, and coverture. *See Alcoa Steamship Co. v. Charles Ferran & Co.,* 443 F.2d 250, 253 n. 9 (5th Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed. 2d 94 (1971); *Danzy v. United States Fidelity & Guaranty Co.,* 380 So.2d 1356, 1359 n. 5 (La.1980). According to Judge Ellis:

> Amongst these apparently varied "personal" defenses, one common denominator is discernible—each person possessing a "personal" defense obtained that defense because the law granted it to all members of his class as a matter of public policy. The personal defense attaches to the status. Hence parents, children, husbands, wives, governmental units, charitable organizations, bank-

rupts, lunatics, interdicts, vessel owners, and the like possess a defense denied their respective insurers.

*Alcoa Steamship Co. v. Charles Ferran & Co.,* 251 F.Supp. 823, 831 (E.D.La.1966), *aff'd,* 383 F.2d 46 (5th Cir.1967), *cert. denied,* 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968). Among those defenses created by state law which are not personal, but are available to all solidary obligors, are the defense of usury, *Meadow Brook Nat'l Bank v. Recile,* 302 F.Supp. 62, 81 (E.D.La. 1969), and the bar to liability created by the Louisiana Deficiency Judgment Act, *Simmons v. Clark,* 64 So.2d at 522–23. Defenses created by federal law to state causes of action have been treated in a similar manner. The protection of the automatic stay provision of the federal bankruptcy law, 11 U.S.C. § 362, created for the benefit of the bankrupt debtor, for example, is a personal defense and is not available to the debtor's solidary obligors. *Aaron v. Bankers and Shippers Ins. Co.,* 475 So.2d 379, 382 (La.Ct.App.1985). A "red letter clause" limiting liability in a ship repair contract, however, is not a personal defense to the ship repairer and may be pleaded by the ship repairer's solidary obligors. *Alcoa Steamship Co.,* 443 F.2d at 253–54. The prohibition of suits between co-workers under the Longshoremen's Act, 33 U.S.C. § 933(i), is not a personal defense but may be claimed by the negligent coworkers' solidary obligors. *Nations v. Morris,* 331 F.Supp. 771, 774 (E.D.La.1971), *aff'd,* 483 F.2d 577, 589 (5th Cir.), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973).

The contract defense created by the filed rate doctrine is not limited to buyers of natural gas for resale in the interstate market. The Natural Gas Act is not set up to benefit the class of buyers of natural gas but is designed to benefit the public. The Act is specifically directed at regulating the *sales* of natural gas, not at protecting those with the "status" of buyer. 15 U.S.C. § 717(b); *see Southern Union Co,* 857 F.2d at 817; *Mobil Oil Corp.,* 463 F.2d at 259. The filed rate doctrine provides that "no regulated *seller* of natural gas may *collect* a rate other than the one filed

with the commission." *Hall,* 453 U.S. at 577, 101 S.Ct. at 2930 (emphasis added). We hold that the defense to liability created by the operation of the filed rate doctrine arises from the nature of the obligation and is not a personal defense under article 1801 of the Louisiana Civil Code and is, therefore, available to Amoco in this action.[3]

■ LL & E argues that, while the foregoing analysis would be correct if Amoco were Tennessee's surety, it does not hold true for Amoco as a solidary obligor. LL & E cites extensive authority for the proposition that each solidary obligor is independently liable to the obligee, from which LL & E concludes that, although the filed rate doctrine may bar its claim against Tennessee, that defense has no application to the *independent* obligation of Amoco. LL & E, however, misstates the relationship of the parties in this case. While Tennessee and Amoco, as solidary obligors, are each fully, equally, and independently obligated on the contract with LL & E, there is but one obligation. The operative facts of the transaction in this case, not the status of the parties, bring the filed rate doctrine into play. The defense created by the filed rate doctrine goes to the validity of the contract price for the sale of natural gas, regardless of the identity of the parties to the contract. It is axiomatic that any defense which discharges the obligation itself does so equally and fully for all solidary obligors to that obligation. Therefore, we hold that Tennessee's filed rate doctrine defense bars LL & E's action against Amoco.

The judgment of the district court is AFFIRMED.

---

**3.** If this result were not obvious under state law, the same disposition might be required under federal law. If state law allowed LL & E's claim against Amoco, then Amoco would be entitled to indemnification from Tennessee. *See* La.Civ. Code Ann. art. 1804 (West 1987). Thus state law would create an end run around any federal regulatory scheme. By joining a third party guarantor to the contract of sale, the parties could always evade the federal price regulations by sending the unlawful portion of the price indirectly to the seller via the third party guarantor, as LL & E attempted to accomplish by this law suit. Federal law would undoubtedly forbid such a gambit. *See Hall,* 453 U.S. at 579, 101 S.Ct. at 2931.