749 P.2d 1098

**CONSOLIDATED OIL & GAS, INC.,**
**Plaintiff–Appellee,**

v.

**SOUTHERN UNION COMPANY, Gas Company of New Mexico and Southern Union Gathering Company, Defendants–Appellants.**

**No. 16037.**

Supreme Court of New Mexico.

July 9, 1987.

Rehearing Denied Aug. 14, 1987.

Certiorari Denied Feb. 22, 1988.
See 108 S.Ct. 1021.

Montgomery & Andrews, Victor R. Ortega, Sarah M. Singleton, Santa Fe, Strasburger & Price, Leo J. Hoffman, Bruce E. Henderson, Dallas, Tex., Morrison & Forester, Robert M. Leoffler, Washington, D.C., for defendants-appellants.

Campbell & Black, Michael B. Campbell, Bradford C. Berge, Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

Consolidated Oil and Gas, Inc. (Consolidated) sued Southern Union Company (SUC), Gas Company of New Mexico (GASCO), and Southern Union Gathering Company (Gathering) for breach of a Settlement Agreement from a prior price litigation. SUC responded with a request for a reformation of the contract in question on the grounds of "mistake," because federal energy regulation rendered the agreement unenforceable as written. Consolidated then amended its complaint, first to allege fraud and subsequently to allege negligent misrepresentation. SUC answered that the relief requested by Consolidated would still conflict with federal price regulation. After Consolidated had abandoned its contract claim, the trial court found no actual fraud, but entered judgment for Consolidated on the claim of negligent misrepresentation.

SUC appeals to this court. We affirm the judgment of the trial court, but remand for recalculation of pre-judgment interest.

The dispute underlying this action involves the intricacies of interstate and intrastate pricing and regulation of natural gas, and the stakes are high. Judgment was for a total of $11,023,967 plus statutory interest. Nevertheless, the primary issue on appeal is simply whether Consolidated reasonably relied on the representations of SUC when it entered into the Settlement Agreement. Put more narrowly, does substantial evidence support the trial court's finding that Consolidated's reliance was justified?

SUC raises three additional issues on appeal:

II. Whether the trial court's decision and damage award are pre-empted by the system of federal regulation of interstate gas sales;

III. Whether the trial court erroneously adopted Consolidated's damage calculations incorporating stripper well prices in excess of those permitted by state law; and

IV. Whether the trial court erred in calculating pre-judgment interest.

## FACTS

In 1953, SUC spun off its subsidiary, Gathering, which purchased gas from producers in the San Juan Basin. Gathering commingled the gas and resold some interstate through the pipeline of El Paso Natural Gas Company (El Paso) and some intrastate through a parallel pipeline of another SUC subsidiary, GASCO.[1] Some thirty years ago Consolidated began to sell gas to SUC, for resale in both interstate and intrastate markets.

There are four contracts at issue here, dated August 24, 1956, January 1, 1958, September 6, 1960 and November 26, 1960.[2] The 1958 contract was originally between Consolidated and Gathering; SUC assigned the remaining three to Gathering in 1963. At that time, Gathering was reselling most of the gas interstate to El Paso.

---

1. In 1976 Southern Union Gas Company became Southern Union Company and the subsidiary supplying gas to New Mexico customers was renamed Gas Company of New Mexico. In January 28, 1985 SUC sold GASCO to Public Service Company of New Mexico (PNM). Effective the same date, SUC transferred the stock of Gathering to a subsidiary of PNM.

2. The last contract was severed in 1963 and one part assigned from SUC to Gathering. The portion retained by SUC continued sales entirely intrastate.

**FEDERAL JURISDICTION**

The Federal Power Commission (FPC or Commission) and its successor, the Federal Energy Regulatory Commission (FERC or Commission) have exercised close control over pricing and other features of interstate gas sales ever since the Natural Gas Act of 1938 (NGA), 15 U.S.C. § 717.[3] In 1954 the United States Supreme Court upheld the authority of the FPC to regulate sales by independent producers for resale interstate. *See Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954).

■ To sell gas interstate, a producer must obtain a certificate of public convenience and necessity from the FPC. 15 U.S.C. § 717(c). Once a certificate is issued, the gas is "committed and dedicated" to the interstate market and therefore subject to the price ceilings established by the FPC. The gas cannot then be removed from federal regulation unless the FPC approves abandonment. Finally, if intrastate and interstate gas become commingled, then all the gas in the commingled stream is deemed committed to interstate commerce and thereby subject to federal price ceilings and regulation. *See California v. Lo–Vaca Gathering Co.,* 379 U.S. 366, 85 S.Ct. 486, 13 L.Ed.2d 357 (1965) (*Lo–Vaca*).

SUC substantially assisted Consolidated in drafting the applications for certification in 1958 and 1963.[4] At that time the interstate market for gas was stronger and more stable than the intrastate market, although prices in both were comparable. Subsequently, Gathering established an entirely separate "nonjurisdictional system," which originally received deliveries from Consolidated and others for resale interstate. The FPC approved this temporary arrangement for a period of three years. After 1973 this system became exempt from federal regulation as the gas in it was directed to GASCO for resale intrastate.

With the onset of the "energy crisis" in the early 1970's, the unregulated intrastate prices started to soar, diverging from interstate prices. As a result, in 1974, a number of SUC's suppliers, including Consolidated, brought suit to enforce the most favored nations clauses in their intrastate contracts. Aztec Oil and Gas (Aztec) was SUC's greatest supplier and leading litigant.

Gathering intervened in the action, claiming that SUC had partially assigned to Gathering its interest in the contract dated November 26, 1960. Yet SUC admitted in its answer to Consolidated's complaint that the contract, "certificated" in 1963, involved only intrastate sales. From this and other evidence it can be concluded that SUC possessed the ability to transfer, unilaterally, intrastate gas into a commingled stream subject to certification in interstate commerce.

Consequently, Consolidated grew concerned to learn the ultimate destination of its gas. If it were never commingled with interstate gas, but rather channeled by Gathering into its intrastate or "nonjurisdictional" lines, then federal price ceilings need not apply. The trial court in this case found, and SUC does not seriously challenge, that only SUC could know into which of its parallel pipelines any particular gas was flowing.

SUC obtained a partial summary judgment in the first suit and its producers appealed. While the appeal was pending, in 1976, SUC and Aztec arrived at a settlement in principle to replace the intrastate contracts with new ones giving increased price terms. At the same time, the settlement included a provision for replacing the interstate contracts, not at issue in the litigation, with more modern ones containing pricing and other terms more favorable to producers.

Evidently SUC intended to effectuate similar settlements with Consolidated and

**3.** In 1978, Congress passed the Natural Gas Policy Act (NGPA) which continued federal regulation and established prices directly, instead of delegating that function to the FERC. 15 U.S.C. §§ 3313–14.

**4.** In 1972, Consolidated independently applied for and obtained from the Commission a single blanket small producer certificate.

the other producers. Accordingly, SUC began to negotiate with Consolidated. Consolidated made repeated inquiries of SUC to learn whether the gas under the four disputed contracts was in fact flowing in interstate commerce.

SUC prepared a draft agreement dated June 3, 1976, providing higher prices for only the six intrastate contracts in dispute in the producer litigation. The draft set forth the following recital by way of introduction:

It is recognized that all the gas sold by the Producer under the Contract was resold and consumed solely within the State of New Mexico and therefore such sales by the Producer were not subject to regulation by the Federal Power Commission.

Consolidated rejected this first offer of settlement because it did not include the disputed contracts.

SUC attorneys revised the draft by inserting two provisions: one added the four disputed contracts to the six previously listed; the second increased the lump sum settlement amount for past sales from $544,164.93 to $641,258.12, reflecting the intrastate price differential. Significantly, SUC did not delete or amend the recital that all the gas covered by the contract was intrastate. Dated June 28, 1976, this draft was signed by Oran L. Haseltine, as vice-president of GASCO and Gathering. Relying on SUC's representations, Consolidated signed the second draft, releasing all its litigated claims against SUC. Because GASCO was and is a "public utility" under state law, the Settlement Agreement had to be reviewed and approved by the New Mexico Public Service Commission (PSC). On July 22, 1976, with full public hearing and review, PSC issued its Final Order approving the Settlement Agreement. The Final Order noted that "a strong possibility exist[ed]" that the Supreme Court would rule against GASCO on its appeal of the producer litigation and that therefore stockholders and ratepayers would benefit from a settlement. Furthermore, the Final Order concluded that "[t]he proposed settlement of the producer litigation is fair and reasonable and in the public interest."

Pursuant to the Settlement Agreement and the PSC Final Order, the parties filed a Stipulation of Dismissal in the district court on July 1, 1976. On December 1, 1976, Consolidated demanded payment from SUC of the intrastate price for gas sold under the disputed contracts, consistent with the Settlement Agreement. SUC refused to pay more than the interstate price, stating that federal law dictated such a result.

Consolidated sued, in November 1979, alleging breach of the Settlement Agreement. SUC raised the defense of mutual mistake, and answered that the agreement should be reformed because the gas sold under the disputed contracts had always been, for federal regulatory purposes, "jurisdictional."

In March 1980, SUC moved the trial court to stay the proceedings while their petition was pending before FERC. Consolidated responded by filing a motion to amend its complaint to add a count for fraud and deceit. On August 4, 1980, the trial court granted Consolidated's motion to amend, denied SUC's motion for stay, and referred to the Commission the questions of primary jurisdiction and applicability of interstate price ceilings. The court reserved to itself the "controlling principles of state law with respect to actions at law for fraudulent and deceitful conduct."

Subsequent to taking depositions of SUC representatives, Consolidated moved again to amend its complaint, in August 1984, to include a count for negligent misrepresentation. The trial court granted the motion, and SUC answered with the affirmative defense that the FERC had determined that interstate price ceilings applied to the commingled gas. Therefore, SUC maintained, to pay the higher prices claimed by Consolidated would be to violate federal law.

After a bench trial, the trial court found that SUC had negligently misrepresented the jurisdictional status of the gas and that Consolidated had released its claims against SUC in reasonable reliance on the misrepresentation. The trial court found

that Consolidated was damaged in the amount equal to the difference between the interstate price and the amount SUC should have paid if the representations had been true. SUC timely appealed to this Court.

## RELATED PROCEEDINGS

■ A. In March 1980, Gathering petitioned the Commission to assert primary jurisdiction over the suit and to issue a declaratory order that the disputed contracts concerned interstate sales subject to federal price ceilings and that Consolidated should refund the portion of the lump sum payment in excess of the allowable interstate prices. The FERC did not assume primary jurisdiction, but it did ultimately enter an order declaring that the gas sales in question were subject to federal price ceilings under the NGA. 28 FERC Par. 61,225 (1984). On rehearing, the FERC affirmed this order. 30 FERC Par. 61,350 (1985).

Consolidated petitioned for review of the FERC orders to the U.S. Court of Appeals for the District of Columbia Circuit. 806 F.2d 275 (C.A.D.C.1986). The appellate court, citing *Lo-Vaca,* affirmed the Commission, holding that federal jurisdiction attached once the gas in question had become commingled with gas flowing in interstate commerce. It is the fact of commingling, not certification, that confers FERC jurisdiction.

It is by now abundantly clear that commingled gas is subject to price ceilings established by the FERC. Therefore, as a matter of law, parties may not contract for the sale of commingled gas at prices exceeding the FERC ceilings. There is thus no cause of action sounding in contract available to Consolidated to recover the intrastate prices promised in the Settlement Agreement.

B. The Commission itself, however, has consistently declined to entertain this litigation on the merits. After losing in the trial court, SUC petitioned the Commission for a declaratory order that it would violate federal price regulation for Consolidated to collect the damages awarded by the trial court, especially inasmuch as the amount

of damages corresponds exactly to the difference between the interstate price ceiling and the intrastate price for the four disputed contracts. On June 19, 1986, the Commission issued an order declaring that the damages awarded by the state court are tort damages and thus do not violate maximum lawful price provisions of the NGPA, nor interfere with the federal regulatory scheme. 35 FERC Par. 61,359 (1986). The Commission rested its decision on the case of *Gulftide Gas Corporation,* 31 FERC Par. 61,288 (1985) (*Gulftide Gas*), in which "the Commission declared that the award of tort damages, whether exemplary or actual, does not conflict with NGPA maximum lawful prices." 35 FERC at Par. 61,822. Furthermore, the order denied SUC's request for a refund of the allegedly excess lump sum payment. *Id.*

SUC filed a request for rehearing with the Commission on July 21, 1986. In its request, SUC again urged that FERC was the preferred forum for Consolidated's claim. By way of its footnote No. 13, SUC suggested that FERC would have had the authority upon a sufficient showing by Consolidated, to approve the prices provided by the Settlement Agreement. Of course this argument runs contrary to the "bright line" of jurisdictional price controls, behind which SUC had sought refuge from its obligations represented in the Settlement Agreement.

Almost summarily, the Commission rejected the request, finding that SUC had presented no new facts or arguments. The Commission explained that it had determined *Gulftide Gas* to be controlling as precedent, reiterating the principle that the award of damages for misrepresentation in a state law case does not conflict with maximum lawful prices established by the NGA and NGPA.

Finally, in response to SUC's arguments that Consolidated, through "artful pleading," was wilfully mischaracterizing its cause of action to avoid federal jurisdiction and that the Commission saw only a "snapshot" of the whole case, the Commission declared that:

In making that determination, the Commission reviewed Consolidated's state court damage award, including the amount of damages, the basis for the damages, as well as the relevant facts and circumstances and applicable legal principles.

## I.  JUSTIFIABLE RELIANCE

■ A.  On appeal to this Court, SUC characterizes the entire controversy as the result of a "drafting error" in the Settlement Agreement, contending that Consolidated had sufficient independent knowledge not to be misled by the admittedly negligent representation.  At no time, however, has SUC provided, either to the trial court or to this Court, a convincing explanation for why its "mistake" came about, or why it went undetected for so long.  Consolidated had rejected the first draft because it did not refer to the disputed contracts.  That reference was added and the lump sum augmented unilaterally by attorneys for SUC; the draft was signed by an officer of SUC.

There is evidence in the record that SUC was anxious to settle the producer litigation quickly.  It is unquestionable that SUC was in the position of superior knowledge, both of the physical distribution of the gas and of its legal and jurisdictional implications.  Conceivably, just as SUC had assisted Consolidated in the original certification, and as it had arranged for Gathering to obtain FPC approval to have one of its pipelines revert to "nonjurisdictional" status, so it might have led Consolidated to believe that similar assistance might be forthcoming to obtain Commission approval to abandon the certification and revert the gas to intrastate sales.  The trial court concluded that SUC owed a fiduciary duty to Consolidated to give truthful and accurate information regarding the resale destination of the gas, and that SUC by words and conduct breached that duty.

Furthermore, although the court did not find that Consolidated had proved fraud by clear and convincing evidence as required by law, it did note that there was some evidence of actual or constructive fraud.

B.  Finally, it must be emphasized that the events in question occurred in the context of litigation.  This was not a simple transaction wherein SUC agreed to buy and Consolidated agreed to sell certain amounts of gas at certain prices.  Such a contract, if in fact mistaken, could be rescinded or reformed.  Here, however, the consideration given by Consolidated was the value of its claim in the producer litigation.  At this juncture it would be impossible to restore the parties to the *status quo ante*.  The Settlement Agreement itself formed but a portion of the overall arrangement approved and authorized by the PSC.

In addition, we observe that SUC has enjoyed for some ten years the use of nearly nine million dollars as a result of its misrepresentations.  At some moment an end must be declared to these proceedings.  SUC asserts that it would be wrong to award Consolidated a "windfall" for relying on representations which it should have known were impossible as a matter of federal regulation.  We agree with the trial court that in light of the legal and factual relationships involved, SUC cannot use Consolidated's inadvertance to excuse or justify its own.  Accordingly, the judgment of the trial court on this point is affirmed.

## II.  PRE–EMPTION

■ SUC contends to this Court, as did Gathering to the Commission, that the pervasive scheme of federal price regulation pre-empts a state court award of damages, citing *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed. 2d 856 (1981) (*Arkla*).  In that case, the Supreme Court struck down the judgment of a state court that awarded contract damages in excess of federally filed rates.  The Commission distinguished *Arkla* because it was decided on the basis of the filed rate doctrine, which is inapplicable to the present proceeding.

We agree.  Even more important to our analysis, however, is the distinction established by the *Arkla* court itself.  The damages awarded by the trial court in *Arkla* constituted simply the contractual price,

which was found to exceed the permissible filed rates. The Supreme Court stated that federal regulation would be undermined if state courts could authorize contractual agreements contrary to a congressionally established scheme. There was no finding in *Arkla,* however, of any intentional misconduct by defendants. In the present case, the trial court awarded damages, not as contract prices, but as consequences for tortious conduct. For this reason, too, *Arkla* does not provide precedent for the case at bar. We join with the Commission in following instead the rule of *Gulftide Gas* that tort damages do not conflict with federally regulated pricing. Finally, we conclude from the foregoing that the federal pre-emption argument advanced by SUC has been effectively answered in the appropriate federal forum.

### III. STRIPPER WELL CALCULATION

■ SUC challenges Consolidated's calculation of damages based on production from "stripper" wells, which were at the time subject to independent price regulation under the New Mexico Natural Gas Pricing Act (NMNGPA). *See* Laws 1979, Ch. 97, § 3 and Laws 1977, Ch. 73, § 7 (now repealed). The testimony at trial is in conflict as to the legal effect of the Settlement Agreement on the price to be paid for stripper wells. Consolidated's witness stated that he excluded stripper wells when calculating the price differentials. SUC's witness testified that the NMNGPA would have prevented Consolidated from receiving the full price for stripper wells in December 1978 and January, February and March 1979. SUC asserts that, as a result, Consolidated overestimated its damages in the amount of $38,415.

Our review of the record does not reveal the clear and obvious error claimed by SUC. Moreover, the nature of the suit and the damages awarded by the trial court are such that our affirmance is based not solely on what prices would have been permissible according to contract, but rather on the values Consolidated thought it would receive when it relied on the representations made by SUC. There is substantial evidence to support all the elements of the trial court's calculation of damages.

### IV. CALCULATION OF INTEREST

■ SUC contends on appeal that the trial court erred in its award of prejudgment interest. The trial court intended to award 6% simple interest, the statutory amount in effect at the time the suit was filed. *See* NMSA 1978, § 56–8–4 (Repl. Pamp.1986). Consolidated concedes that the trial court incorrectly computed the interest award from a calculation incorporating monthly compounding. The result was an award of interest in excess of the statutory rate, contrary to the holding of this Court in *Shaeffer v. Kelton,* 95 N.M. 182, 188, 619 P.2d 1226, 1232 (1980).

■ Consolidated replies that the overall damages were, if anything, too low in comparison to actual damages incurred. Because of the long time between filing of the lawsuit and the entry of final judgment, Consolidated claims that it was forced to borrow funds at interest rates well in excess of those computed by the trial court in calculating damages. Consolidated requests this Court to remand the cause to the trial court for an upward revision of the damage award. This we decline to do. The cases Consolidated cites from other jurisdictions do not convince this Court to overturn our holding in *Shaeffer v. Kelton.*

The judgment of the trial court is affirmed and the cause remanded for the sole purpose of recalculating the amount of prejudgment interest.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.