**SOUTHERN UNION COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Consolidated Oil and Gas, Inc., Intervenor.**

**No. 87–1232.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 31, 1988.

Decided Sept. 23, 1988.

Robert H. Loeffler, with whom W. Stephen Smith and Margaret A. Flaherty, Washington, D.C., were on the brief, for petitioner. William F. Squadron, Washington, D.C., also entered an appearance, for petitioner.

Samuel Soopper, Atty. F.E.R.C., with whom Catherine C. Cook, Gen. Counsel, and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent. Joe Davies, Atty., F.E.R.C., Washington, D.C., also entered an appearance, for respondent.

Richard G. Morgan, Washington, D.C., was on the brief, for intervenor Consol. Oil and Gas, Inc.

Before ROBINSON, RUTH BADER GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Southern Union Company ("Southern Union") has petitioned for review of orders of respondent Federal Energy Regulatory Commission ("FERC" or "Commission"), which denied Southern Union's petition for a declaratory order that federal regulation of interstate gas prices prevents collection by intervenor Consolidated Oil & Gas, Inc. ("Consolidated") of a certain state court judgment obtained against Southern Union. The judgment awarded benefit-of-the-bargain damages for Southern Union's negligent misrepresentation, in connection with a litigation settlement agreement, that gas purchased by Southern Union from Consolidated under certain existing contracts was not subject to federal price regulation. We conclude that the Commission erroneously determined that the matter was not controlled by *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.

2d 856 (1981) ("*Arkla*"), and vacate its orders.

## FACTUAL BACKGROUND

Petitioner Southern Union purchases natural gas in New Mexico for resale in both interstate and intrastate commerce.[1] Intervenor Consolidated produces and sells natural gas in New Mexico to Southern Union. The two entered into various contracts, including four indirectly at issue here involving interstate gas and six others that involved only intrastate gas. Consolidated sold the interstate gas to Southern Union first under authority of a certificate of public convenience and necessity and later a small-producer certificate, both of which limited its price to a federally-regulated level.

In 1974, Consolidated sued Southern Union in New Mexico state court for breach of the "favored nation" provision in the six intrastate contracts, which assured Consolidated that it would receive as much for its gas as Southern Union paid any other producer. The litigation settled in 1976 and Consolidated dismissed its claims. The settlement agreement, at the insistence of Consolidated, covered all ten previously mentioned contracts between the parties and contained a recitation that all gas covered by the settlement agreement was solely intrastate. Shortly thereafter, claiming mistake, Southern Union refused to pay any amount higher than the interstate rate on the four contracts on the grounds that the gas sold under the four contracts was in fact interstate and that any higher payment was therefore illegal.

In 1979, Consolidated sued Southern Union on the settlement agreement in New Mexico state court, seeking specific performance and damages equal to the unpaid difference between the rate specified in the settlement agreement and the lower interstate rate actually paid by Southern Union. Southern Union and the state trial court

separately sought rulings from respondent Commission on the jurisdictional status of the gas under the four contracts, and FERC ruled that it was interstate gas for which Consolidated could not collect contract damages in excess of federal rates without authority from FERC. *Southern Union Gathering Co.,* 28 F.E.R.C. ¶ 61,225, at 61,427 (1984), *reh'g denied,* 30 F.E.R.C. ¶ 61,350, at 61,708 (1985), *aff'd sub nom. Consolidated Oil & Gas, Inc. v. FERC,* 806 F.2d 275 (D.C.Cir.1986). The Commission noted, but did not resolve, the question whether damages for fraud that would have the effect of Consolidated realizing an unauthorized rate would be subject to its approval. 28 F.E.R.C. ¶ 61,225, at 61,427. In denying Consolidated's request for rehearing, the Commission clarified that its ruling was not an automatic test; instead, the Commission would consider any actual award in light of a number of factors. 30 F.E.R.C. ¶ 61,350, at 61,711.[2]

In addition to breach of contract, Consolidated's complaint alleged both fraud and negligent misrepresentation, and Consolidated won a judgment on the latter theory. The New Mexico trial court found that Southern Union had negligently misrepresented that the gas purchased under the four contracts was resold intrastate, inducing Consolidated to release its claims in the 1974 litigation over the six intrastate contracts. Consolidated failed, however, to prove its claim for fraud and punitive damages. *Consolidated Oil & Gas, Inc. v. Southern Union Co.,* No. SF 79–2161(C), 2 (N.M.Dist.Ct. May 21, 1985), Joint Appendix ("JA") 14 (letter order announcing decision). The court awarded as damages the difference between the interstate rate actually paid and the higher rate that "would have been paid had the representations of SOUTHERN UNION been true." *Consolidated Oil & Gas, Inc. v. Southern Union Co.,* No. SF 79–2161(C) (N.M.Dist.Ct. Jul. 12, 1985) (decision; emphasis in original).

---

1. It is immaterial to the issues before us that the purchaser was Southern Union Gathering Company, Southern Union's wholly-owned subsidiary. We therefore refer herein solely to Southern Union for convenience.

2. The factors enumerated by the Commission included the amount and basis of damages, relevant facts and circumstances of each case, and applicable legal principles.

The New Mexico Supreme Court affirmed, holding as to damages that its "affirmance is based not solely on what prices would have been permissible according to contract, but rather on the values Consolidated thought it would receive when it relied on the representations made by [Southern Union]," taking into account "the nature of the suit."[3] *Consolidated Oil & Gas, Inc. v. Southern Union Co.*, 106 N.M. 719, 725, 749 P.2d 1098, 1104 (1987), *cert. denied,* — U.S. —, 108 S.Ct. 1021, 98 L.Ed.2d 986 (1988).

### THE PROCEEDINGS BELOW

Concurrently with its now-failed state appeal, Southern Union petitioned FERC a second time, seeking a declaratory order that Consolidated could not collect its judgment because to do so would constitute exacting an unlawful price for interstate gas. The Commission has entered three orders, all adverse to Southern Union, essentially on the grounds that the judgment is in fact an award of damages for tort and not for the purchase price of gas. *Southern Union Co.*, 35 F.E.R.C. ¶ 61,359, at 61,822 (1986), *reh'g denied,* 39 F.E.R.C. ¶ 61,212, at 61,745, *reaff'd,* 41 F.E.R.C. ¶ 61,203, at 61,529 (1987). The last reconsideration occurred, with our leave, after Southern Union had filed its petition here. It is this order which we now review. The Commission initially relied, 35 F.E.R.C. ¶ 61,359, at 61,822, upon its decision in *Gulftide Gas Corp.*, 31 F.E.R.C. ¶ 61,288, at 61,594 (1985), in which the Commission ruled that certain punitive damages awarded by a state court for fraudulent misrepresentation were not awarded to compensate for gas but to punish and that the actual damages there awarded were within the lawful maximum price. *Id.* at 61,596. FERC abandoned its reliance on *Gulftide Gas* in its final order below in favor of a simple declaration that the state court decision represented damages, sounding in tort, as compensation for rights surren-

dered by Consolidated in reliance on Southern Union's negligent misrepresentation regarding the jurisdictional status of the gas. 41 F.E.R.C. ¶ 61,203, at 61,531. The Commission concluded that the damages were not compensation for gas and that no federal interests were infringed. The Commission consistently distinguished *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981) ("*Arkla*"), as a contract case involving the filed rate doctrine.

Southern Union's petition also sought an order that Consolidated refund a portion of a lump sum paid to Consolidated at the time of the 1976 settlement. Southern Union claimed that the refund sought also represented payments in excess of interstate rates for the disputed contracts, but the Commission determined that Southern Union had not so demonstrated and denied that portion of the petition. That issue is not before us on Southern Union's petition for review of FERC's orders and we express no opinion thereon.[4]

### ANALYSIS

#### A. *Reviewability*

■ No party questions our jurisdiction of this petition for review, 15 U.S.C. §§ 717r(b), 3416(a)(4) (1982), but intervenor Consolidated questions FERC's jurisdiction below in two respects. First, Consolidated contends that FERC has no statutory power to review or alter a judgment for tort damages awarded in state-court litigation that does not involve the sale of natural gas. The present case, in Consolidated's view, involved only a litigation settlement agreement. This contention is without merit. Consolidated cites no authority in support of its proposition and concedes the authority of the Commission to determine and enforce first-sale price ceilings for natural gas. Brief for Intervenor at 22. That conceded authority is exclusively federal, 15 U.S.C. §§ 717u, 3414 (1982); *Arkla*, 453 U.S. at 580–82, 101 S.Ct. at 2931–33, and

---

**3.** See *infra* note 5.

**4.** The issue presented in Southern Union's brief addresses only "damages for a purchaser's 'negligent misrepresentation.'" Brief for Petitioner

at 1. The refund sought was paid under the settlement agreement. 41 F.E.R.C. ¶ 61,203, at 61,532 (1987).

includes the incidental power to determine whether in fact a state court action, however denominated, has the impermissible effect of infringing the exclusively federal prerogative. *See Arkla,* 453 U.S. at 578–79, 101 S.Ct. at 2930–31.

Consolidated raises a second contention. In Consolidated's view, the federal preemption and measure-of-damages issues are barred on the grounds of issue preclusion or collateral estoppel because the state courts decided the issues adversely to Southern Union after full and fair hearing and because both issues were raised in Southern Union's petition to the Supreme Court for a writ of *certiorari.* The short answer to Consolidated's contention is that the possibility of the instant proceedings have been manifest almost from the beginning of the state court action. The state trial court referred questions of jurisdiction and price to FERC, " 'absent controlling principles of state law with respect to actions at law for fraudulent and deceitful conduct.' " 28 F.E.R.C. ¶ 61,225, at 61,425 (1984) (quoting referral). The court failed to find fraud, but FERC's response reserved the right to exercise jurisdiction in the event that state-awarded tort damages effectively increased Consolidated's rate over the lower of either the applicable ceiling price or contract price. 28 F.E.R.C. ¶ 61,225, at 61,427. Consolidated's petition for review of that order made no issue of this reservation of right, and we fully affirmed the then-contested portions of FERC's determination. 806 F.2d at 281.

We are not persuaded that application of the issue preclusion doctrine would be fair in this case. *See generally Otherson v. Department of Justice,* 711 F.2d 267, 273 (D.C.Cir.1983) (fairness a factor in issue preclusion); *cf.* Restatement (Second) of Judgments § 28(1), (3) & Comments a, e (1982) (exceptions to collateral estoppel based on lack of opportunity for review of initial decision, and based on state/federal jurisdictional allocations). Southern Union petitioned the United States Supreme Court for a writ of *certiorari,* which Consolidated opposed in part by an apparent reference to the instant proceedings. In light of the distinct possibility that the Court may have

declined to issue the writ in deference to the pendency of the proceedings below, we decline to apply the doctrine of collateral estoppel with its full rigor to Southern Union.

**B.** *The Arkla Decision*

Having affirmed the Commission's right to have considered the matter below, we proceed to examine its decision under the standard of review specified in 5 U.S.C. § 706 (1982). Southern Union's principal contention is that the Commission's decision was not in accordance with law because FERC was bound by, but did not follow, the decision in *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981) (*"Arkla "*). We agree.

In *Arkla,* where a favored nation clause was triggered, the seller sued on the contract and won in state court, and the buyer appeared to owe a higher price for interstate gas but for the filed rate doctrine. "Under that doctrine, no regulated seller is legally entitled to collect a rate in excess of the one filed with the Commission for a particular period." 453 U.S. at 576, 101 S.Ct. at 2929. The seller there had the contract rate on file with FERC's predecessor, the Federal Power Commission, and had not filed the higher favored nation rates because the buyer failed to notify the seller it was paying a higher rate to others. The Louisiana Supreme Court determined that it was the buyer's failure to inform the seller of the provision-triggering payments that had prevented the seller from filing necessary rate increase requests, and that such requests probably would have been approved because the new rates still would have been within applicable ceilings. *Hall v. Arkansas Louisiana Gas Co.,* 368 So.2d 984, 991 (La.1979). Since Louisiana law regarding failed contractual conditions provided that "one should not be able to take advantage of his own wrongful act," *id.* at 990, the filings were deemed to have been made and the favored nation provision was enforced by the state courts. *Id.*

The United States Supreme Court vacated the Louisiana Supreme Court's calcula-

tion of damages. 453 U.S. at 584–85, 101 S.Ct. at 2933–34. The Court indicated that neither state nor federal courts can exercise the Commission's power to determine what are just and reasonable rates, and FERC itself cannot make retroactive rate adjustments. The Court agreed with the buyer's argument that "[n]o matter how the ruling of the Louisiana Supreme Court may be characterized, ... it amounts to nothing less than the award of a retroactive rate increase...." *Id.* at 578, 101 S.Ct. at 2931. The Court was not persuaded that the buyer's concealment that prevented the seller from making necessary filings justified an estoppel exception to the doctrine. *Id.* at 583 & n. 13, 101 S.Ct. at 2933 n. 13. The court below had found a simple breach of contract, and the record contained no finding of misconduct or intentional failure to inform. The Court reserved the question of the effect on the doctrine of "affirmative misconduct" or "fraudulent conduct" for another day. *Id.* at n. 13.

### C. *Applicability of Arkla*

We think the Commission observed correctly, in the earlier phase of this matter, that the distinction between amounts in excess of a filed rate at issue in *Arkla* and amounts in excess of the applicable price ceiling at issue here is not a material difference with respect to damages awarded for breach of contract. 28 F.E.R.C. ¶ 61,225, at 61,427 (1984). The Commission determined, however, that it was not bound by *Arkla* because that case addressed itself to contract damages under the filed rate doctrine, whereas the damages here were awarded for the tort of negligent misrepresentation in the course of settlement negotiations. *See* 41 F.E.R.C. ¶ 61,203, at 61,- 532 (1987).

■ This is an inadequate basis upon which to distinguish *Arkla.* First, the tort-contract distinction is not determinative in this context. Federal gas-price regulation is exclusive. 453 U.S. at 577, 580, 101 S.Ct. at 2930, 2931. Although the applicable statute governs the "sale" of natural gas, 15 U.S.C. §§ 717c, 3314(a) (1982), the

preemptive effect of the statute is not thereby limited to state actions that directly and expressly relate to the price term of sale transactions. The test is instead whether state law conflicts or interferes with attainment of federal law objectives. *Cf. Chicago & North W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 319, 101 S.Ct. 1124, 1131, 67 L.Ed.2d 258 (1981) (must be "inconsistent"). In *Arkla* itself, the Court cited the "state common-law tort action" preempted in *Kalo* as "analogous," 453 U.S. at 580, 101 S.Ct. at 2932, to the preempted breach of contract claim before it. Second, the Court in *Arkla* recognized that it is significant which remedies are provided and which are not in a scheme of federal regulation, and the Court implicitly indicated that the unavailability of retroactive rate increases from FERC thereby negated their availability in a state forum. 453 U.S. at 584, 101 S.Ct. at 2934. In a related vein, the Court concerned itself with the *effect* of the state judgment, determining not to permit "what amounts to" a retroactive rate increase in the form of a judgment for breach of contract. *Id.* Thus we conclude that neither we nor FERC can determine whether the state judgment awarding damages for negligent misrepresentation conflicts with federal law simply by considering the basis of liability alone. Instead, we must also examine the practical effect of the state remedy as well.

■ It is here that we conclude that the Commission erred. To remedy the effect of Southern Union's negligent representation, the state awarded damages that unquestionably were for the price of gas. The trial court was explicit that the damages represented "the difference between the interstate prices paid for their gas by Southern Union and the intrastate prices which *should have been paid* by Southern Union, that is to say, *the benefit of the bargain.*" *Consolidated Oil & Gas, Inc. v. Southern Union Co.,* No. SF 79–2161(C) (N.M.Dist.Ct. May 21, 1985), JA 14 (letter order announcing decision; emphasis supplied). The trial court also made a finding that Consolidated's damages were "the difference between what it was paid by

SOUTHERN UNION under the settlement agreement and the amount it *would have been paid had the representations of SOUTHERN UNION been true.*" *Consolidated Oil & Gas, Inc. v. Southern Union Co.,* No. SF 79–2161 (C) (N.M.Dist.Ct. Jul. 12, 1985), JA 24 (decision; capitalization original, other emphasis supplied). In affirming, the New Mexico Supreme Court stated that the damages represented "the values Consolidated thought it would receive when it relied on the representations made by" Southern Union.[5] *Consolidated Oil & Gas, Inc. v. Southern Union Co.,* 106 N.M. 719, 725, 749 P.2d 1098, 1104 (1987). The record is quite clear, however, that the subject matter of these expectations and representations was the price agreed to be paid for gas in the settlement agreement. Consolidated asserted in its answer to Southern Union's petition below to FERC that "[t]he contract involved in the New Mexico litigation is the 1976 Settlement Agreement," JA 443, and "[t]he Settlement Agreement established prices for specific vintages of gas sold by Consolidated to Southern Union under all contracts." JA 425. The gas sold under four of those contracts has been determined to be subject to the interstate price limitation. 806 F.2d at 277. It follows quite plainly, then, that the state measure of damages is based upon, and has the effect of awarding, a price for interstate gas that, to the extent that price exceeds federal guidelines, the state court has no power to award. To that extent, the settlement agreement simply is a bargain that the state has no power to enforce. The judgment here is indistinguishable from the one that was disapproved in *Arkla,* except for the stated basis of liability for damages.

■ This leads us, of course, to whether the present judgment falls within the postulated misconduct exception to *Arkla.* The state has found that Southern Union's conduct was negligent but not fraudulent. *Consolidated Oil & Gas, Inc. v. Southern Union Co.,* No. SF 79–2161(C), 2 (N.M. Dist.Ct. May 21, 1985), JA 14 (letter order

announcing decision). We conclude that negligent misrepresentation alone is not a sufficiently culpable level of misconduct to avoid the effect of *Arkla.* The *Arkla* Court indicated that it would require fairly egregious conduct to consider making an equitable exception to its ruling by the phrases it used to describe what the seller there had *not* shown: "intentionally failed," "effort to defraud," "affirmative misconduct," "fraudulent conduct." *Arkla,* 453 U.S. at 583 & n. 13, 101 S.Ct. at 2933 n. 13. The less specific term *misconduct* is used in a context that clearly indicates that it is fraudulent misconduct that is thereby intended; nothing in the passage indicates that a lesser standard of misconduct, such as negligence, was intended by the Court. Our reading is consistent with the Court's immediately following observation that a showing of a violation of state law, without more, is insufficient to change its analysis. *Id.* at 584, 101 S.Ct. at 2934. We also note that the *Arkla* Court reached its result without addressing the fact that the Louisiana Supreme Court implicitly characterized the buyer's misconduct as a "wrongful act." *Hall,* 368 So.2d at 990. Mere negligence—all that was found here —is conduct in violation of state-prescribed standards of conduct and therefore arguably misconduct, but is not, in our view, such "affirmative misconduct," 453 U.S. at 583, 101 S.Ct. at 2933, over and above violation of state law as to "affect the analysis." *Id.* at 584, 101 S.Ct. at 2934. Our conclusion that the Commission's order failed to follow a controlling case, then, remains unaltered.

There is no occasion for us to question FERC's acceptance of the state court determination of the basis of liability, and we have disregarded the portion of Southern Union's brief questioning the findings and conclusions. Nor do we question New Mexico's use of the benefit-of-the-bargain measure of damages for negligent misrepresentation when federal gas price limitations are not exceeded. As did the Court in

---

**5.** The quoted passage occurs in a discussion of state pricing limitations, but is equally applica-

ble to federal pricing limitations.

*Arkla,* we determine no more than that the "calculation of damages," *id.* at 585, 101 S.Ct. at 2934, employed by the New Mexico courts was inconsistent with preemptive federal gas-price regulation and that the Commission failed to follow the controlling *Arkla* case. Accordingly, we set aside the Commission's orders that are the subject of this petition and remand the matter to FERC for such further proceedings as are necessary and consistent herewith. The petition is hereby

GRANTED.