986 F.2d 546
 300 U.S.App.D.C. 83
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
GEORGIA-PACIFIC CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
CONSOLIDATED MINERALS, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 Nos. 91-1489, 91-1490.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 16, 1993.
 
 Before WALD, RUTH BADER GINSBURG and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on a petition for review from an order of the Federal Energy Regulatory Commission ("FERC"). The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, we conclude that the petitioners' joint request for rehearing of an order by the FERC is not barred by either the statutory period for seeking rehearing or the doctrine of claim preclusion. Accordingly, it is
 
 
 2
 ORDERED that this matter be remanded to the FERC. It is
 
 
 3
 FURTHER ORDERED that the FERC vacate its denial of rehearing based on its original judgment that the petition was barred because it addressed issues that were or should have been litigated in a prior proceeding. It is
 
 
 4
 FURTHER ORDERED that the FERC address the merits of the petitioners' joint request for rehearing.
 
 
 5
 The Clerk is directed to withhold issuance of any mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 6
 Petitioners Georgia-Pacific Corp. and Consolidated Minerals, Inc. are customers of the Florida Gas Transmission Company ("FGT"). This dispute arose before the Federal Energy Regulatory Commission ("FERC") as a result of recent changes in FGT's scheduling allocations and curtailment procedures that decreased the amount of gas available to petitioners, who are priority users under Sections 401 and 402 of the Natural Gas Policy Act, 42 U.S.C. §§ 3391, 3392 (1988).
 
 
 7
 As a threshold matter, the parties disagree over which FERC order the petitioners are, in fact, challenging. Petitioners styled their challenge as a petition for rehearing of the FERC's May 31, 1991 order rejecting tariff sheets filed by FGT. Florida Gas Transmission Company, 55 FERC p 61,337 (1991). In its denial of rehearing, Florida Gas Transmission Company, 56 FERC p 61,264 (1991), the FERC claimed that the petitioners' challenge actually was an attempt to reverse the Commission's June 15, 1990 Settlement Order. Florida Gas Transmission Company, 51 FERC p 61,309 at p. 62,009 (1990) ("Settlement Order"). Since petitioners had not sought rehearing of that Order's scheduling provisions, concluded FERC, they would not be permitted to relitigate those provisions in a subsequent proceeding. Petitioners appeal this denial of rehearing. Because we conclude that the petitioners were not barred from bringing their challenge, we remand to the FERC to address the merits of their petition.
 
 I. FACTUAL BACKGROUND
 
 8
 Historically, FGT customers have received their allocations of gas under a priority system based primarily on the class of customer. "Firm" customers laid first claim to the gas, while "preferred interruptible" customers had second priority, ahead of "primary interruptible" customers. Petitioners contracted for both firm and preferred interruptible service.
 
 
 9
 Since 1980, FGT has also had an end-use curtailment plan, under which it allocates gas to customers in the case of capacity shortages. The curtailment plan gives the highest priority to residential customers, and the next highest priorities to agricultural and industrial process end-users, such as petitioners. This curtailment plan historically has operated across the board, without distinctions between firm and interruptible service.
 
 
 10
 In October 1989, as part of its conversion to an "open access" pipeline, FGT filed a proposed settlement designed to resolve a number of issues, including capacity allocation and curtailment procedures. On June 15, 1990, the FERC entered a Settlement Order accepting FGT's proposal with certain modifications. At the heart of this dispute is the Settlement Order's provisions relating to preferred interruptible service. It required that preferred interruptible service be scheduled on a first come, first served basis to ensure that newcomers to the system not displace existing customers. 51 FERC at 62,011. All existing preferred interruptible customers--including petitioners--were treated as a class and assigned a priority date of October 19, 1989, the date of the proposed settlement. This gave them priority over newer customers. Within each priority date, however, the order provided that gas must be allocated pro rata, and not based on end use.
 
 
 11
 The order distinguished, however, between these "scheduling" provisions and the end-use based "curtailment" provisions. Curtailment was, as always, based on end-use priorities. Thus, the Order contemplated that gas that had been scheduled first come, first served, would, instead, be assigned according to the user's priority in "instances in which the pipeline is unable to deliver all nominated volumes after deliveries have been scheduled for the day." 51 FERC p 61,309. FGT accepted the terms of the Settlement Order, and on July 13, 1990 issued tariff sheets to implement its scheduling provisions and curtailment procedures. No party requested rehearing or judicial review of the Settlement Order nor objected to FGT's tariff filing.
 
 
 12
 In the fall of 1990, however, two preferred interruptible customers (who are not parties to this appeal) complained to the FERC's Enforcement Task Force that FGT had improperly used curtailment procedures to allocate gas among the October 19, 1989 customers. This complaint, and the events it triggered, led to the current appeal. First, the FERC's General Counsel wrote a letter to FGT, suggesting that the gas company seek clarification of when it could invoke its curtailment procedures. In response, FGT filed tariff sheets providing that it could employ end use curtailment priorities, and not pro rata scheduling, to allocate scheduled service among preferred interruptible customers within the same priority date where shortfalls were caused by customer overtakes.
 
 
 13
 On May 11, 1991, FERC entered an order rejecting FGT's tariff filing. Petitioners filed a joint request for rehearing of this order, stating that they had understood the Settlement Order to preserve the historical priority-based scheduling allocation within each priority date.[1] The FERC's denial of that rehearing is the subject of our review.
 
 II. ANALYSIS
 
 14
 The FERC argues that the issues raised by the petitioners--the scheduling allocation within a priority date and the circumstances under which the curtailment procedures could be invoked--were determined in the Settlement Order. Its order denying their petition for rehearing suggests that the petition was time-barred for failure to seek a timely rehearing of that order.[2] The agency's brief to this court, however, argues that the petitioners are barred by the doctrine of res judicata. We address both arguments.
 
 A. Failure to Seek Timely Rehearing
 Section 19 of the Natural Gas Act states:
 
 15
 Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order.... No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.
 
 
 16
 15 U.S.C. § 717r(a) (1988) (emphasis added). It goes on to provide that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure to do so." Id. 717r(b). Thus, the FERC appears to argue that when petitioners, who were parties to the Settlement Order, did not seek review of these issues within the thirty-day statutory period, the provisions became final and unreviewable.
 
 
 17
 Although a petition for rehearing of a FERC order cannot be filed beyond the statutory period, there are limited circumstances in which certain issues addressed in the order might later be open to challenge. See Cities of Batavia v. FERC, 672 F.2d 64, 72 n. 15 (D.C.Cir.1982) ("While a petition from an agency order cannot be filed after the statutory time period for filing has run, it may be that some of the issues that might have been raised in that appeal are so inextricably linked to a subsequent agency opinion on another aspect of the same case, that those issues may be raised in a timely appeal from the second opinion.") (emphasis in original). For example, we permit such a challenge when the first order's effect on the party was "unclear" at the time, that is, when its "lack of clarity" led the party "justifiably" to misinterpret its effect on that party, Kansas Cities v. FERC, 823 F.2d 81, 86 (D.C.Cir.1983), and accordingly, not to seek review. Thus, in Kansas Cities, we permitted a challenge by two municipalities that had not appreciated the consequences of the FERC's "ambiguous" first order until a later order made clear what the Commission intended. The Kansas Cities petitioners' timely appeal from the second order permissibly reached issues addressed in the first.
 
 
 18
 We believe the same result obtains here. Viewed in hindsight, and through the lens of the FERC's subsequent orders, we can find in the Settlement Order sufficient notice to alert the wary customer that the terms of its allocation were subject to change. But disregarding the enlightenment and clarification provided by the FERC's later orders and its brief to the court, we find the Settlement Order too ambiguous fairly to constitute a bar to petitioners' claims.
 
 
 19
 The Settlement Order included several statements that could have led a reasonable customer to misinterpret the nature of the Order's changes. The Order stated the FERC's intention to "protect the quality of the service" provided to existing preferred customers. Petitioners argue that this did not alert them to the dramatic change in the status quo. Further, the Order stated that the FERC "ha[d] found nothing that indicates Florida Gas' existing approved curtailment method is unduly discriminatory." Again, petitioners took this to signal the continuation of the existing curtailment plan. Although the FERC did instruct FGT to clarify its tariff provisions to distinguish when its capacity curtailment provisions, as opposed to its scheduling provisions, would be in effect, petitioners did not read this call for "clarification" as signalling a change. The FERC's statement that the curtailment provisions would be in force "only after scheduling has taken place and only after an unexpected loss of capacity has occurred" could reasonably have been read to encompass situations broader than the FERC intended. To corroborate their claim of ambiguity, petitioners note that the FERC's Assistant General Counsel for Enforcement herself had expressed uncertainty about whether the FGT's use of curtailment procedures had violated the Settlement Order and suggested that FGT request a tariff clarification from the Commission.
 
 
 20
 We do not suggest that the FERC was deliberately ambiguous or obtuse. To the contrary, we have no reason to doubt that the FERC's order was issued with the good faith intention to put all parties on notice of the terms of the settlement. As may happen, however, with an order of this complexity, there were sufficient ambiguities to make us question the fairness of holding that the petitioners were put on notice of the content and scope of the changes in the FGT's policies.
 
 
 21
 The policy requiring timely filing of motions for reconsideration is one of fairness to the [regulatory agency] and to parties affected by the order; only a perversion of that policy could be used to cut off the rights of a party that filed its application in good faith, as soon as it could reasonably have become aware of the import of the earlier order.
 
 
 22
 Sam Rayburn Dam Elec. Coop. v. FPC, 515 F.2d 998, 1007 (D.C.Cir.1975), cert. denied, 426 U.S. 907 (1976). Therefore, we hold that petitioners' claims are not barred by the statutory period for rehearing.
 
 B. Claim Preclusion
 
 23
 In its brief to this court, the FERC argues that the petitioners' claims are barred by the doctrine of res judicata, or claim preclusion.[3] Claim preclusion provides that "when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " Nevada v. United States, 463 U.S. 110, 129-30 (1983) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1877)). Claim preclusion bars not only matters that were actually litigated, but also "matter[s] that never ha[ve] been litigated," because of a determination that they "should have been raised in an earlier suit." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984). Thus, the petitioners' claims in this case are precluded either if they were actually litigated or if they might have been--and therefore should have been--litigated in the 1990 Settlement Order. Natural Resources Defense Council, Inc. v. Thomas, 838 F.2d 1224, 1235 (D.C.Cir.1988). Litigation before an agency as well as before a court can result in claim preclusion. United States v. Utah Constr. Co., 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.") (citations omitted).
 
 
 24
 We conclude that the doctrine of res judicata does not bar petitioners' claims. As a preliminary matter, we note that "rate orders are generally not res judicata because '[e]very rate order made may be superseded by another.' " Norfolk & Western Ry. Co. v. United States, 768 F.2d 373, 378 (1985) (quoting Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 445 (1930)). That general principle notwithstanding, we inquire whether the very issues challenged here--the scheduling allocation within a priority date and the circumstances under which the curtailment procedures could be invoked--either were or should have been litigated in that earlier action. We conclude first that, contrary to the FERC's claims, these issues were not actually litigated. They cannot fairly be said to have been "distinctly put in issue and directly determined," Montana v. United States, 440 U.S. 147, 153 (1979), where the petitioners, because of the ambiguity of the Settlement Order, did not even raise them. See Norfolk & Western Ry. Co. v. United States, 768 F.2d 373, 377 (D.C.Cir.1985) no preclusion where pleadings in earlier proceeding did not raise precise issue before the court); cf. Western Coal Traffic League v. ICC, 735 F.2d 1408, 1410 (D.C.Cir.1984) (claims precluded where they were "litigated and decided ... in a direct attack" in another court).
 
 
 25
 Next, we conclude that the petitioners' failure to raise these issues does not operate as a bar. The general rule of preclusion does not apply where there is a
 
 
 26
 clear and convincing need for a new determination of the issue ... because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of the subsequent action, or ... because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.
 
 
 27
 RESTATEMENT (SECOND) OF JUDGMENTS § 28(6) (1982). We conclude that, given the ambiguity of the Settlement Order, it was not "sufficiently foreseeable" in 1990 that these issues would arise in this context, and that this ambiguity constitutes "special circumstances" denying the petitioners an adequate opportunity to obtain a full and fair adjudication of these issues. Since the doctrine rests in part on the notion that a party had a "full and fair opportunity to litigate" the matter, Montana v. United States, 440 U.S. 147, 153 (1979), it would be unfair to invoke it here. We have previously declined to preclude claims where doing so would be unfair. Southern Union Co. v. FERC, 857 F.2d 812, 816 (1988) (citing Otherson v. Department of Justice, 711 F.2d 267, 273 (D.C.Cir.1983)).
 
 
 
 [1]
 They also objected on three other grounds: first, the May 31 order violated Section 5 of the Natural Gas Act, 15 U.S.C. § 717d, by altering service priorities without conducting a hearing; second, it violated Title IV of the Natural Gas Policy Act by departing from FGT's then-existing priorities; and third, it was an unlawful assertion of jurisdiction because it required FGT to file a revised tariff imposing scheduling penalties on direct sales customers
 
 
 [2]
 The FERC simply stated:
 No party requested rehearing of the settlement order's decision on the pro rata scheduling provision. Florida Gas and the applicants may not now seek to reverse that decision in this proceeding by submission of a tariff proposal identical to the one rejected in the settlement order.
 In its brief to this court, the FERC itself states that its reason for denying the petition was the Commission's conclusion "that petitioners were time-barred...."
 
 
 [3]
 Since the term "res judicata " is often used to encompass two distinctive concepts--claim preclusion and issue preclusion--we will use the more precise term of "claim preclusion." See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984); 18 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4402 (1981)